# CHARLESTON.

## HUBBARD *v.* YOCUM.

Submitted January 18, 1888.—Decided February 11, 1888.

1. APPEAL—JUSTICE OF THE PEACE.

A party to an action who, after the expiration of ten days after the justice has rendered a judgment in said action, applies, under section 174, ch. 50 of the Code, to the Circuit Court, or a judge thereof in vacation, for an appeal to such judgment, must file his application in writing and the proof with it, which proofs must all be in writing, including his own or the affidavits of others. (p. 756.)

2. APPEAL—JUSTICE OF THE PEACE.

The good cause for not having taken the appeal within ten days,

which is required by this section, must be such as would authorize a court of equity, if the suit had been in the Circuit Court, to enjoin a judgment of such court till a new trial of the case could be had, when a party had failed to apply to the common-law court during the term for a new trial; such, for instance, as fraud, accident, mistake, or surprise, or some adventitious circumstance beyond the control of the party. (p. 756.)

3. APPEAL—JUSTICE OF THE PEACE.

If such application be made to a judge of the Circuit Court in vacation, and he grant the appeal, the written application and proofs, as well as the bond given to him, and the order granting such appeal, should be by him transmitted to the clerk of the Circuit Court; and this order should be entered in the order-book under the title of the case, and a copy thereof should be served on the justice. (p. 758.)

4. APPEAL—JUSTICE OF THE PEACE.

When a justice has transmitted to the clerk of the Circuit Court a complete transcript of his docket in the proceedings in the action, together with the original papers relating thereto, the clerk should file with them all the papers so transmitted to him by the judge. (p. 758.)

5. APPEAL—JUSTICE OF THE PEACE.

The opposite party to the one who has obtained such appeal may move to have it dismissed, as improvidently awarded, because, by the written proof, including the affidavits in writing on which the judge acted in granting such appeal, good cause was not shown for the failure to take the appeal within ten days. (p. 759.)

6. APPEAL—JUSTICE OF THE PEACE.

If such appeal be dismissed on such motion, the party who obtained the appeal may, where the amount involved is sufficient, at once take his appeal to this Court from such order; but if the court, on such motion to dismiss the appeal, overrule the motion, the party making the motion can not take an appeal till the action is finally decided by the court; and, if the amount involved be sufficient to entitle him to appeal from the final judgment, he may, on such appeal, have reviewed, if he has been prejudiced thereby, not only the final judgment, but also this order of the court refusing to dismiss the appeal. (p. 759.)

7. APPEAL—JUSTICE OF THE PEACE.

Ignorance of the law of the State regulating such proceedings in such action, or in the appeal from the judgment of the justice, is not a good cause for granting such appeal by a Circuit Court, or judge thereof, though the party applying for the appeal is a non-resident of the State. (p. 747.)

8, APPEAL—JUSTICE OF THE PEACE.

The fact that a party has neglected to attend to such action before the justice, or to take an appeal within ten days after said judgment, because of his absence from home attending to his ordinary business, is not a good cause for granting such appeal by a Circuit Court, or a judge in vacation.   (p. 750.)

9. APPEAL—JUSTICE OF THE PEACE.

A defendant who has been served with the summons, though he resides out of the State, suffers a judgment to be rendered against him by a justice in this State without paying any sort of attention to the case.  He lives not more than a half day's journey from the county where such judgment was rendered; his home being connected with such county by a railroad.  The day before judgment is rendered he writes to counsel in the county; which letter he mails, but it miscarries, for some cause, and is never received by the attorney.  The letter asked the attorney, if judgment was rendered against the writer, to take an appeal.  He then, without making any inquiry whether the letter had been received, or whether the appeal had been taken, leaves his home, going a half day's journey by rail to attend to his usual business.  Upon these facts, the Circuit Court, or a judge thereof in vacation, ought not to grant an appeal to such party, under section 147, ch. 50 of the Code.   (p. 750.)

Statement of the case by GREEN, JUDGE:

This was an action brought by the plaintiffs before a justice of Tyler county against the defendant to recover of him damages, which the plaintiffs had sustained by the defendant's breach of contract with them to furnish and put a slate roof on the house of F. E. McCoy ; and the plaintiffs in the summons claimed the sum of $200.00 as such damages.  This summons was issued September 6, 1884; it was returnable at the justice's office on October 1, 1884; and at the same time an attachment was issued against the defendant as a non-resident.  I need not state the proceedings under this attachment, as it was in effect abandoned by the plaintiffs.  On the same day the summons was issued, September 6th, 1884, it was executed by serving a copy of it on the defendant, Cyrus M. Yocum, in person, and it was duly returned by the constable as so served.  He did not appear at the trial of the case on October 1st, 1884, and two witnesses introduced by the plaintiffs were examined before the justice; and, the plaintiffs' evidence having been all heard by the justice, he

rendered a judgment for the plaintiffs for $142.50 and costs. The next day an execution was issued on this judgment. It was levied on a keg of nails and 16 squares of slate at the depot at Sistersville in said county, which was sold for $45.75, This was credited on the execution, and it was returned as to balance not satisfied. On October 22d, 1882, the defendant, Cyrus Yocum, presented to the judge of the Circuit Court of Tyler in vacation his bond, as required by law, in the sum of $285.00, with good security, conditioned according to law, and at the same time presented to him his petition asking the judge to grant him an appeal from this judgment. This petition was sworn to by him. The petition and affidavit are as follows:

"Your petitioner, Cyrus M. Yocum, respectfully represents that on the 6th day of September, 1884, G. E. Hubbard and J. O. K. Hubbard instituted a suit before Robert Henderson, a justice of Tyler county, West Virginia, as G. E. Hubbard and J. O. K. Hubbard, partners and contractors, doing business under firm name of J. O. K. Hubbard, against your petitioner, in which they claimed two hundred dollars damages for an alleged breach of contract for the sale to them of a certain lot of roofing slate; that said suit was set for trial on the 1st day of October, 1884, tried on that day, and judgment rendered against your petitioner for one hundred and forty-two dollars and fifty cents damages, and costs of suit.

" Your petitioner further says that he is not a resident of the State of West Virginia, but resides in Steubenville, Ohio; and that owing to the fact that another suit is pending in the Circuit Court of Tyler county involving the same general questions, and the further fact that his business as a slate-roofer requires him at this season of the year to be absent from home a great deal, and that at the time said action was set for hearing before the justice he was away from home, engaged in a job of roofing at Urichsville, Ohio, and intending, if said suit was decided against him, to take an appeal therefrom, he did not attend said trial, and judgment was rendered against him as aforesaid.

"Your orator further represents that he has just grounds for defence against said action, and that the plaintiffs are not entitled to recover; that he was wholly ignorant of the laws

of West Virginia, and did not know that the appeal must be taken within ten days, and, owing to the fact that he was away from home, the ten days had elapsed before he could ascertain the result of said action and communicate with an attorney in the State of West Virginia; that, as soon as he could do so, he consulted with an attorney, and then found that it was too late for him to take an appeal from said judgment by filing his bond with said justice; that the plaintiffs in said judgment are taking steps to enforce the same in the State of Ohio, and, if the same is allowed to stand, a gross injustice will be inflicted on your petitioner.

"Petitioner further says that on the 30th day of September, 1884, he mailed a letter to I. N. McKnight, whom he had employed in another case pending in your honor's court, requesting him to see after this case, and, if judgment was rendered against him, to take an appeal, as he would not be able to be there himself; that said letter totally miscarried, and was never received by said McKnight, and he heard nothing from the said McKnight until the time for taking an appeal had expired.

"Your petitioner therefore prays that your Honor will grant him an appeal from the judgment of said justice, and an order to him directed requiring him to cease all further proceedings in said cause, to recall all executions and orders that may be outstanding for the enforcement of said judgment, and to transmit to the clerk of said Circuit Court a transcript of the proceedings in said action, together with the original papers thereof, as the law directs, and as in duty bound, will ever pray, etc.

"C. M. Yocum.

"McKnight & Engle,
　　　"For Petitioner.

"*State of West Virginia, County of Tyler:* Cyrus M. Yocum, the petitioner named in the foregoing petition, being sworn says, that the facts therein contained, so far as they are stated from his own knowledge, are true, and that, so far as they are stated upon information, he believes them to be true.

"C. M. Yocum.

"Subscribed and sworn to before me, David Hickman, a

notary public within and for the county of Tyler, in the State of West Virginia, this 21st day of October, 1884.

"D. HICKMAN,

"Notary Public."

This bond, petition and order were received by the clerk on October 24, 1884, and the order entered on record; and a copy of the order was served on the justice, who on October 30, 1884, transmitted to the clerk of said court all the original papers in said case and a transcript of the proceedings in said case. After several continuances of the case in the said Circuit Court, on December 15, 1885, the plaintiffs, the appellees, moved the court to dismiss the judgment granted, as improvidently awarded. This motion was renewed at a subsequent term of the court, when the court, on April 24, 1886, overruled it. After several other continuances of the case, on August 9, 1887, without any answer or plea having been filed by the defendant, or any defence noted on the record as put in by him, a jury of six were sworn "to well and truly try the matters in difference between the parties, and a true verdict give;" and, the parties offering no evidence to the jury, they retired to their rooms to consider their verdict, and returned the following verdict: "We, the jury, on the issues joined between the parties, find for the defendant, Cyrus M. Yocum." On this verdict the court overruling a motion for a new trial rendered this judgment: "It is considered by the court that the judgment rendered by Robert Henderson, Esq., a justice for Tyler county, on the 1st day of October, 1884, in favor of the plaintiffs against the defendant for $142.50, and the costs of suit, be reversed and annulled, and that the defendant recover against the plaintiff his costs by him about his defence in this behalf expended."

To this judgment a writ of error and *supersedeas* has been granted the plaintiffs.

*T. P. Jacob* and *J. H. McCoy* for plaintiffs in error.

*B. Engle* for defendant in error.

GREEN, JUDGE:

The first inquiry is: Should the Circuit Court have dismissed the appeal awarded the defendant to the judgment of

the justice in favor of the plaintiffs, by the order of the judge in vacation, on the petition of the defendant, supported by his affidavit, as improvidently awarded, the plaintiffs having made a motion to dismiss this appeal·as improvidently awarded? Under our statute-law the defendant, Cyrus M. Yocum, could have taken an appeal from the judgment of the justice for $142.50 rendered against him on October 1, 1887, as of right on giving the required appeal-bond at any time within 10 days after the judgment was rendered against him. See chapter 50, §§ 163, 164, Code 1887, p. 462. After ten days he could not take an appeal as of right; but after that time and within ninety days from the rendition of the judgment upon showing to the Circuit Court or the judge thereof in vacation, by his own oath or otherwise, good cause for not having taken such appeal within said ten days and giving the required bond, such court or judge might grant him an appeal. See chapter 50, Code 1887, § 174, pp. 464, 465. This substantially has been the statute-law of this State always. See Code 1868, §§ 163, 164, 174, pp. 370, 372. The appeal for a time was to the County Courts or the president thereof in vacation instead of the Circuit Court or the judge thereof in vacation; and the County Court had the power to grant the appeal after ten days, under the same circumstances, as the Circuit Court or a judge thereof, in vacation had theretofore had, and now has. See chapter 226, Acts 1872-73, §§ 118, 128, as the last of these sections is amended by chapter 63, Acts 1877.

Under our statute-law the defendant could have taken an appeal from the judgment for $142.50, rendered against him by the justice in ten days after it was rendered,—that is, from October 1, 1887,—as of right, on his giving the required appeal-bond. See chapter 50, §§ 163, 164, Code 1887, p. 462. After that he could not take an appeal as of right; but after that time and within ninety days from the time the judgment was rendered against him, upon showing to the Circuit Court or judge thereof in vacation by his own oath or otherwise good cause for his not having taken such appeal within the ten days, and giving the required bond such court or judge might grant him such appeal. If this appeal should be granted without good cause, it would on the motion of the

plaintiffs be dismissed by the Circuit Court as improvidently awarded; and his action in refusing to dismiss such appeal, for the reason that, when granted, good cause had not been shown why the appeal was not taken within the ten days, may be reviewed by this court. See *Machine Co.* v. *Floding*, 27 W. Va. 540; and *Ruffner* v. *Love*, 24 W. Va. 181.

The decision in the former case was as follows, (see third point of syllabus.) "When application is made to such court or judge for such appeal, the facts relied on as showing good cause must be set out in such application; and they must show that he was prevented from taking such appeal within 10 days by fraud, accident or adventitious circumstances beyond his control, as would entitle him to a new trial." In the latter case, it was held, that a mistake or want of knowledge of the law, even if caused by advice of counsel, was no such circumstance as would be good cause for granting such an appeal.

Of course it is entirely immaterial whether the appellant resided in or out of the State. Of course it is entirely immaterial whether he was plaintiff or defendant in this case. All suitors in the courts in this State must be presumed to know the law regulating the practice and proceedings in such cases; and it applies as much to non-residents of the State, who sue or are sued in our courts, as it does to citizens of the State. This legal presumption is based on public policy, which would be as much disregarded, were the rule relaxed as to suitors in our courts, who were non-residents, as it would be, if relaxed in cases, where the suitors were residents of this State. No doubt the enforcement of the rule sometimes against non-residents as well as against residents will work a hardship; but perhaps not more often with non-resident suitors than with resident suitors. To relax the rule at all would be contrary to obvious public policy. If it were done, there would be no limit to the excuses of ignorance, and no one could have any assurance as to what our law really would be held to be in any case, though it were plain statute-law.

The rule we have laid down of what constitutes good cause for awarding an appeal from a justice's judgment

shows that it is the same rule which has been constantly applied in this State. Where an application is made by a bill in equity seeking relief and asking a new trial, to obtain such relief of a court of equity, as has been repeatedly decided in this State, the applicant must prove facts showing that the judgment was obtained against him at law by some fraud, accident, surprise or, some adventitious circumstances beyond his control. And these cases will serve to illustrate what are regarded as good cause for such new trial and relief; and under what facts, sworn to by the party asking such new trial or proven otherwise, should be required by a Circuit Court or judge before he awards such new trial, under our statute. See *Smith* v. *McLain*, 11 W. Va. 654; *Knapp* v. *Snyder*, 15 W. Va. 434; *Alford* v. *Moon's Adm'r*, Id. 597; *Braden* v. *Reitzenberger*, 18 W. Va. 286; *Shields* v. *McClung*, 6 W. Va. 79. See, also, *Meem* v. *Rucker*, 10 Grat. 509, and numerous other Virginia cases referred to in *Knapp* v. *Snyder*, pp. 441, 442.

We will now apply this law to the case before us. We have, in the statement of the case, set out at length the affidavit and petition of the defendant, Cyrus M. Yocum, on which this appeal was granted by the judge of the Circuit Court of Tyler county in vacation, 21 days after the justice had rendered the judgment against him. The petition sworn to by the defendant, Cyrus M. Yocum, is a long one, but the ground on which he bases his application are these: *First*, that he was a non-resident of the State, living in Steubenville, Ohio, and did not know that the appeal must be taken, according to the statute law of West Virginia, within 10 days, and that after that it could not be taken of right; and that, owing to his ignorance of the law of West Virginia, the 10 days after the judgment had been rendered against him by the justice expired before he could ascertain that such judgment had been rendered against him.

We have already shown that this ignorance on his part of the law regulating appeals from judgments of justices can not possibly be regarded as good cause for not taking his appeal in 10 days after judgment was rendered against him by the justice. He had been served with the summons on September 6, 1884, in Tyler county, and he knew the case

was to be heard on October 1, 1886, twenty five days after-wards. He, according to his own petition, permitted this judgment to be rendered without making any defence, because he was then engaged in slating a house in Urichsville, Ohio, a town which we judicially know is some fifty miles from his residence at Steubenville, Ohio, and connected with it by railroad. He let this judgment go against him by default, because, as he says in his petition, he intended, if a judgment was rendered against him, to take an appeal therefrom; but he let the time pass in which he could as of right take such appeal, because he was ignorant of the statute-law of West Virginia on the subject. We have seen that public policy imperatively forbids the court to regard this as any excuse, and that the rule of law whereby, as a defendant in a suit in West Virginia, he is legally presumed to know this law, ought not to be relaxed. The uncertainty which would be produced as to what was the law to be applied in a particular case, and the excuses of ignorance of what was the law, that would be constantly offered if this rule of law is relaxed, and the inevitable encouragement of the grossest negligence and carelessness by suitors, if it were relaxed, is well illustrated by this case.

The allowance of ten days in which to take an appeal as of right from a justice has been the plain statute-law of this State from its foundation; and there is probably no statute-law so universally known as this. It must be known to every one who has ever been a justice in the State, and to almost every one who has brought a suit, or been sued, before a justice, however ignorant of the law generally, and, of course, to a vast number of other persons. The defendant, Yocum, lived in Steubenville, and the Ohio river is all that separated his residence from West Virginia. He was, as his petition shows, frequently in West Virginia, carrying on his business of roofing houses with slate. The least possible amount of diligence would have enabled him, therefore, to ascertain how long after a justice's judgment our law allowed a person against whom such judgment was rendered to take an appeal as of right. He was in Tyler county when the summons was served upon him. The constable who served him with the process could have given

him the information which he says he did not have; and so could his lawyer in Tyler county, or, indeed, almost any one there whom he might chance to meet. When at home in Steubenville, he could have got with perfect ease this information at any time. He would have only had to cross the Ohio river. If he had sought for this information in Steubenville, which it is much more probable he would, he could with ease have obtained it there. He had from September 6, 1886, when this summons was served on him, till October 1, 1886, when this judgment was rendered against him, to obtain this information which in all probability he could at almost any time have obtained in half an hour at most. His ignorance of the law was therefore obviously the result of gross carelessness and negligence. It can not be regarded as other than wilful ignorance. To allow this as a good cause for extending to him further time in which to take his appeal would be absolutely absurd.

The second ground on which he asks this extension of time is that he was very busy in his usual business of slate-roofing, and much of his time from home; and thus he did not hear that a judgment was rendered against him on October 1, 1886, the time the case was set for hearing, till more than ten days after this judgment was rendered. This is, if possible, further from a good cause for granting an appeal after the ten days had passed after the judgment was rendered by the justice than was his wilful ignorance of the law. In the first place, he might, without hearing a word, have assumed that, as he made no defence to the suit, there was almost a certainty that the plaintiffs had on October 1, 1886, when he knew the case was to be tried, obtained a judgment from the justice against him. In the next place, though his residence, Steubenville, as the court judicially knows, was some seventy five miles from Sistersville, in Tyler county, yet the two points were connected, both by the Ohio river and by a railroad; so that he could, by addressing a letter to the justice, at any time within a day have learned what judgment had been rendered on October 1st. It is most probable this information could have been furnished by telegraph at any time within an hour or two.

His petition further says he was away from home during

these ten days, attending to his business; but there would have been but little trouble in arranging, before he left home, for obtaining this information, and having it transmitted to him. This excuse for not attending to the taking of this appeal is almost as weak as the excuse of his ignorance of the law. If the fact that a party had neglected to attend to a·suit against him because he preferred to attend to his usual every-day business should be held to be a good cause for neglecting said suit, and a good cause for awarding him a new trial after the time had elapsed in which as of right the law gave him such new trial, if he desired to have one, we might as well strike out of the statute-book, the statute, fixing ten days after a justice's judgment is rendered as the time in which an appeal can be taken therefrom, for it would amount to nothing practically, as such an excuse could be rendered by any defendant. Such an excuse for neglecting to attend to any suit, if listened to, would render our courts a farce. Cases could only be disposed of when it suited the convenience of both parties; and it would occur only in a few cases, and at long intervals, when, under such holdings, the justices could dispose of any business. If the defendant regarded his ordinary business of slate-roofing more important to be attended to than this suit of the plaintiffs against him, he had a right to so regard it, and attend to his ordinary business, and neglect this suit against him, because it would, if attended to, take up a portion of his time, which he was unwilling to allow; but in such case he should, of course, expect to abide by the necessary results of his neglect to give any attention to the suit. The only thing which he ever did in the way of attending to this suit is, according to his petition, what he regards as the last and best cause for the granting him the appeal he sought from the circuit judge.

This third cause is that on the 30th day of September, 1884, he mailed a letter to J. N. McKnight, whom he had employed in another case in the Circuit Court of Tyler as his counsel to see after this suit before the justice, and if judgment was rendered against him, to take an appeal, as he would not be able to be there himself; that this letter totally miscarried, and was never received by McKnight, and he

heard nothing from him until the time for taking the appeal had expired.  Now, it does seem to me that the circumstances appearing in this petition show no good cause why this appeal was not taken within ten days after the judgment was rendered by the justice.  This letter was written and mailed, it is stated in the petition, on September 30, 1884; but though not stated where it was written and mailed, it is to be presumed it was from the home of the defendant in Steubenville, Ohio, about, say, eighty-five miles from the county-seat of Tyler county, where I presume McKnight lived, though it is not stated, either from what point this letter was mailed or to what point.  The distance from Steubenville to Sisterville, a depot on the railroad in Tyler county, was some seventy-five miles, and it was not over ten miles from Sisterville to the county-seat of Tyler; so that a letter mailed at Steubenville would reach McKnight, living at the county-seat of Tyler, within a day of the time when it was mailed according to the regular course of the mails; and a reply from him to the defendant, Yocum, would have reached Steubenville within a day of its mailing.  Yet the defendant says he received no letter from McKnight for more than ten days, when the time allowed to appeal from the justice's judgment as of right had expired.

Now it does seem to me that it was gross negligence in the defendant below, Yocum, when he received no reply to his letter for so long a time, not to see to the matter, and ascertain whether an appeal had been taken to the judgment which he had every reason to believe the justice had rendered against him on October 1st.  He is presumed to know that he had but ten days in which to take this appeal as of right.  If he thought any more about this suit after writing this letter, as he knew, or is presumed to have known, that an appeal-bond, with security would have to be given before the appeal could be granted, he might have supposed that the counsel he had written to might not choose to incur the responsibility of either signing, or getting others to sign, such appeal-bond, which might subject the obligors to pay the whole of this justice's judgment, $142.50, or even more if the judgment of the Circuit Court should be for a larger amount.  The defendant does not profess to have made any

arrangement for the giving of such appeal-bond; and not hearing from his counsel in two or three days after he wrote to him, he, if he had been attending to this suit, as he was bound to do, would have seen further to the matter, having abundant time to do so before the ten days after the judgment was rendered should expire. Getting no reply from his counsel, he might have well supposed he had not received his letter, or, that if he had, he might not have chosen to assume the responsibility of getting an appeal-bond executed, as the defendant had made no arrangement to make it sure that the persons signing such bond would not be annoyed or suffer loss by executing such bond.

It was, it seems to me, the duty of the defendant, when he got no reply to his letter within two or three days after the 1st of October, to go down to Tyler county, which he could easily have done in a day's time, and take the appeal he wished. He had no right, under these circumstances, to assume that it had been done for him by McKnight, his counsel. He had never been told it had been done; and he had, as we have seen, reason to believe it might not have been done. He seems to me to have been grossly negligent in making no effort to ascertain whether it had been done or not. He was willing to take the chances of his counsel having done it, and he must abide by the consequence,—the result of his inattention, really, and not of the miscarriage of his letter. Perhaps, if it had not miscarried, the appeal might have been taken, which is doubtful; but this cannot be considered as the cause of the appeal's not being taken, as he had ample time after he should have received a reply to this letter, if it had not miscarried, to take the appeal within the ten days. A suitor can not thus neglect utterly his case, and throw on counsel the whole responsibility of a miscarriage of the suit, by simply showing that he had written asking him to attend to the case, but furnishing no aid in attending to it, and making not even an inquiry about it of the counsel to whom he may have written to ascertain whether it was being attended to by him. A party, who has been thus negligent, will not be relieved from a judgment or decree against him in favor of defendant.

In *Galloway's Ex'r* v. *Alexander*, 8 Leigh 114, it was held, according to the syllabus of the case, that, "upon a case stated in the bill, the complainant was guilty of laches, and therefore entitled to no relief." The case stated in the bill was, according to the syllabus, " the suit being by a legatee against the plaintiff, as executor, for a legacy. The subpœna was served on the executor in October, 1829, and a decree against him by default in May, 1831. ' Then the executor filed a bill that the executor, the defendant in the former suit, was a nonresident of the State; that shortly after the subpœna was served on him he wrote to an attorney practicing in the court to attend to the suit for him," [a letter, by. the way, very similar to the letter written by the defendant in the case before us ;] that the attorney never filed his answer, or attended to the suit, and died during its progress; that he was ignorant of his neglect or death, otherwise he would have employed other counsel; that on a fair settlement the plaintiff, the executor, would be found in advance to his testator's estate; and the bill prayed for an injunction to the former decree against him, and for general relief." But for the laches of the plaintiff, as shown by the bill, the court says relief in the case could have been given him; but he did not state a case showing that the decree was obtained against him by surprise, but only a case of a decree obtained against him by his own laches. The court, in its opinion, says :

" They had struggled hard to sustain the plaintiff's claim to be heard in opposition to the decree against him; but the plaintiff can not be entitled to the relief after his gross negligence. * * * The case is analogous to injunctions to judgments at law, alleged to have been obtained by accident or surprise. The practice of the court, when most loose, would not have justified an interference in a case like this. * * * It was his duty to inquire as to the progress of the suit."

So, here, under the circumstances of this case, it was the duty of the defendant to have inquired whether his appeal had been taken before the time had expired in which he had a right to appeal. Had he done so, he could have got his appeal; and he had, as we have seen, abundant time within which to make this inquiry, had he not. preferred attending to his ordinary occupations.

The above case was followed in *Hill* v. *Bowyer*, 18 Grat. 364. The last point in the syllabus in that case is : "A defendant upon whom process was served, who wholly neglects his defence, or contents himself with merely writing to a lawyer who practices in the court to defend him, without giving him any information about his defence, or inquiring whether he is attending to his case, is not entitled to relief against a decree by default, on the ground of surprise, however grossly unjust the decree may be." The court, in its opinion, states the facts, (page 382,) which were that the appellant, soon after the institution of the suit, wrote to a lawyer, now Judge Watson, residing in the county where the suit was pending, to engage his service as counsel.   Mr. Watson did not attend to the case, because his partner was acting in the case for a party with the same surname with the appellant, but whose interest was opposed to that of the appellant, and who Watson supposed was the same person who had written to him to act as counsel; and he supposed, by reason of this mistake, that the interest of the appellant, the person who wrote to him, was being properly attended to in the suit. The consequence was that the appellant was wholly undefended in the suit.   The clerk, too, in making a copy of the record used in the case, had made a mistake, whereby the appellant suffered greatly.   But as he gave no attention to his interests in the suit, except to write this letter, the unjust decree against him was regarded, not as the necessary result of the clerk's mistake, or of the mistake of Mr. Watson, but his own gross negligence in failing to attend to his case.

So, in this case, the failure of the defendant to obtain an appeal within the ten days after the judgment was rendered against him by the justice was not the consequence, properly, of the miscarriage of his letter, but of his own gross negligence in making no inquiry about whether the appeal had been granted or not.   Had he paid any attention to his case, the miscarriage of his letter would have resulted in no injury; and he had ample time after the miscarriage to have obtained his appeal.

The decisions in the two West Virginia cases concur in holding that this Court may review the refusal of a Circuit

Court to dismiss an appeal as improvidently awarded by a Circuit Court after more than ten days have expired since the justice's judgment was rendered; but the opinions of the judges who delivered these opinions are not in perfect accord as to the proceedings which should be had in the Circuit Court on such motion to quash the appeal as improvidently awarded. In this case the proceedings were perfectly regular in that respect; and, as the court in neither of these cases decided what were the proper proceedings, it is unnecessary to determine them. What is said on this subject by the judge who delivered the opinion of the Court should not be regarded as the decision of this Court. My own views on these proceedings, under our statute-laws, which I have referred to, are as follows:

In the first place, the statute was adopted to enable a person who, by fraud, accident, mistake, surprise, or some other adventitious circumstances beyond his control, had failed to apply for an appeal (the same, in effect, as a new trial) within the time allowed him by law,—that is, within ten days after the justice's judgment had been rendered,—to still obtain an appeal, i. e. a new trial, within ninety days after the justice's judgment was rendered. Courts of equity had always, in Virginia and West Virginia, afforded redress to a party who, by fraud, accident, mistake, surprise, or some adventitious circumstances beyond his control, failed to apply to a Circuit Court for a new trial within the time allowed by law; that is, before or on the last day of the term at which such judgment was rendered. This would lead us to construe the statute so as to make the remedy given, in such a case, by the statute, similar to the remedy given by courts of equity in similar cases of judgment by the Circuit Court. And accordingly we have found that, by the two cases we have decided on this subject, (*Ruffner* v. *Love*, 24 W. Va. 181, and *Machine Co.* v. *Floding*, 27 W. Va. 540,) the "good cause" for granting a new trial by the Circuit Court, or judge thereof in vacation, is the same good cause which would justify the Circuit Court, or a judge thereof in vacation, to grant an injunction to a judgment of a court of record until a new trial was had of the case, when the bill alleges good cause for not asking a new trial of the common-law court in

the time allowed for granting such new trial, the end of the term at which the judgment was rendered. The remedy, too, we should therefore expect, under the statute, would resemble this remedy by injunction on a bill for a new trial. And, when properly construed, the statute, I think, does furnish a remedy very similar to that of an injunction till a new trial could be had, which courts of equity had furnished, when the judgment was that of a court of record, and for a good cause a new trial had not been asked of the common-law court.

The statute (chapter 50, § 174, pp. 464, 465, Code W. Va. 1887) is: "Appeals from judgments of justices may be granted after the expiration of ten days, and within ninety days, after date of judgment by the Circuit Court in term-time, or the judge thereof in vacation, when the party seeking the appeal shall deliver the court or judge the proper bond, with security thereto, as herein furnished, and show by his own oath or otherwise good cause for not having taken such appeal within said ten days." The bond referred to in this section and provided for in the next section, page 465, if he wish to stay the proceedings on the justice's judgment, is to perform and satisfy such judgment as may be rendered against him by the Circuit Court. This bond is but little different from the bond required when an injunction is awarded to a judgment of a Circuit Court on a bill asking such injunction to such a judgment till the case had been retried, because the party, for good cause, had failed to ask the court of law for a new trial in proper time. See Code 1887, ch. 133, § 10, p. 821. And it is further provided by this 175th section of chapter 50, p. 465, that the court or judge shall make and certify to the justice an order to cease all further proceedings in the case *etc.*, and transmit, without delay, to the clerk of said Circuit Court a complete transcript from his docket of the proceedings in the action, together with the original; and then the cause is to proceed in the Circuit Court as in other appeals from the judgments of justices.

The question is: How is the party under this 174th section, above quoted, " to show, by his oath or otherwise, good cause for his not having taken such appeal within said ten

days?" The statute is silent as to whether this must be shown by proofs in writing, or by verbal evidence, not reduced to writing; that is, whether the proofs whereby this is to be shown are to be in the form required in such injunction suits, which this so much resembles, and in all chancery proceedings, or may be shown by parol evidence, not reduced to writing, as in common-law cases. As these proceedings are *ex parte*, and may be before a judge in vacation, it would be impossible for them to be reversed by an appellate court if the proofs should be the oral testimony of witnesses. The opposite party could not show that good cause had not been thus shown before the judge in vacation, and could not, therefore, have his action in granting the appeal reviewed. Yet we have decided, as I have shown, that it may be reviewed. It seems to me, therefore, that we must hold that, under this statute, this good cause for not having taken such appeal must be shown by evidence reduced to writing,—that is by a written application, which would properly be sworn to by himself or some one else,—and by written affidavits, or other written proofs, filed with such application; the proper mode of doing which would be by filing them as exhibits with the written application.

Nothing is said in the statute as to the disposition to be made of the appeal-bond thus taken before the judge in vacation. It would seem clear that it should be transmitted to the clerk of the Circuit Court along with the written application, and written proofs, and the written order of the judge granting such appeal, and they should all be filed with the papers of the case, when transmitted to the clerk by a justice. It seems to me it would be the duty of the clerk to enter this order on his record book on the law-side of the court; and though this 175th section of chapter 50, p. 465, Code, says that the court or judge shall make and certify to the justice this order granting the appeal, yet when this appeal is granted by a judge in vacation, as well as when granted by the court, the certifying of this order should in both cases be by the clerk after recording the same. This was the mode in which all these proceedings were had in the case before us, and they seem to me to be in accord with the true meaning and spirit of our statute-law. When so done, they pursue

the modes of proceeding when an injunction to a judgment is awarded till a new trial is had, as I think must have been intended; and they afford the opposite party his opportunity to move to quash the appeal, if improvidently awarded.

According to these views, when such motion is made, it would have to be decided by the written application and proofs which were before the judge or court when the appeal was granted, and which have been filed with the papers of the case. No new proof as to whether or not good cause could be shown why the party appealing had not taken his appeal within ten days could be introduced. It seems to me that proceedings so awarded would be carrying out the true meaning of our statute-law. It would depart from the proceedings in such injunction-suit for a new trial, in this: that no proof could be subsequently introduced to fortify or assail the granting of such appeal, though this may be done when such injunction to a judgment is awarded till a new trial may be had. This, though, is the necessary consequence of awarding an appeal directly, which operates as a new trial, and the awarding of an injunction till a new trial is had, which does not finally determine that a new trial is to be had; this being not finally determined till subsequently, on proofs afterwards taken.

Neither is there anything in our statute-law authorizing proofs that the party obtaining the appeal had not good cause for failure to take his appeal within the said ten days. It seems to me, too, that it would be a great hardship on the Circuit Courts, and on the suitors in the court, if there should not only be a trial *de novo* before a justice of trifling cases, very little exceeding $15.00 in amount; but that the time of the Circuit Court should be consumed in also trying *de novo*, on evidence, whether the party who had got his appeal really had good cause for not having taken it within the ten days. The rights of parties in such litigation are sufficiently protected when the person getting such appeal by *ex parte* proofs shows that he had good cause for not taking his appeal in the ten days, and when the judgment of the Circuit Court or judge, on the question whether such good cause has been shown on these *ex parte* proofs in writing, can be reviewed by an appellate court.

For the reasons I have assigned the Circuit Court erred in overruling on April 14th, 1886, the motion of the plaintiffs below to dismiss the appeal in this case granted, because it had been improvidently allowed. I need not consider whether the court erred when the record showed no defence by the defendant before the justice, or in the Circuit Court, in swearing a jury " to well and truly try the matters of difference between the parties."

The judgment of the Circuit Court rendered on the 9th of August, 1887, reversing and annulling the judgment rendered by Robert Henderson, a justice of Tyler county, on October 1st, 1884, in favor of the plaintiffs against the defendant for $142.50, and costs of suit, must be reversed and annulled; and the plaintiffs in error must recover of the defendant in error their costs in this Court expended; and this Court, proceeding to render such judgment as the court below should have rendered, the appeal granted in this case must be dismissed as improvidently granted; and the plaintiffs, G. E. Hubbard and J. O. K. Hubbard, partners under the firm name of J. O. K. Hubbard, must recover of the defendant, Cyrus M. Yocum, their costs expended in this case in the Circuit Court of Tyler county.

REVERSED.