# CHARLESTON.

## POST *v.* CARR.

Submitted January 31, 1896—Decided April 4, 1896.

1. JUDGMENT BY DEFAULT—SETTING ASIDE JUDGMENT.

    After judgment by default has been entered up in court, or an order of inquiry of damages has been executed, under section 46, chapter 125, Code, it can not be set aside, and a defense to the action be allowed, under section 47, without good cause being shown therefor; and such good cause can only appear by showing fraud, accident, mistake, surprise, or some other adventitious circumstance beyond the control of the party, and free from neglect on his part.

2. JUDGMENT BY DEFAULT—FAILURE TO DEFEND SUIT.

    Case where failure of attorney or party to make defense is *held* not good cause for setting aside a judgment by default.

W. P. HUBBARD and S. G. SMITH for plaintiff in error, cited 11 W. Va. 685; 29 W. Va. 381; 37 W. Va. 571; 30 W. Va. 740; 18 Gratt. 364; 41 W. Va. 371; 110 N. C. 466; 57 Ill. 274; 47 Mo. 513; 38 Pac. Rep. 512; 24 S. W. Rep. 842; 93 Cal. 391; 47 Minn. 428; 15 R. I. 191; 21 Wis. 310; 81 Hun, 87; Code, c. 125, s. 11; Code, c. 135, s. 4.

CALDWELL & CALDWELL for defendant in error, cited Code, c. 125, s. 47; Code 1819, Vol. 1, p. 508, s. 77; Barton, Law

Pr. 117, 168; Code, c. 131, s. 7; 24 W. Va. 181, 185; 27 W. Va. 540; 30 W. Va. 740; 18 Gratt. 364; 35 W. Va. 333; 37 W. Va. 287, 828; 38 W. Va. 142; 39 W. Va. 17; 18 Ill. 548; 90 Ill. 537, 543; 39 Ind. 305; 34 Ind. 150; 40 Wis. 527; 16 Fed. Rep. 323; 79 N. C. 511; 65 N. C. 569; 93 Ind. 583; 73 Ill. 293; 89 Ill. 113; 17 Ind. 215; 73 Mo. 123; 51 Ill. 233; 9 Gratt. 40, 255; 5 Am. & Eng. Enc. Law, 496 Z³³ &c.; 1 Grah. & W. New Trials, 174; 18 W. Va. 274, 400; 20 W. Va. 450; 23 W. Va. 472; 11 W. Va. 535; Hogg, Pl. & Forms, 87; 21 W. Va. 378, 379; 12 W. Va. 297, 306, 526; 12 Leigh, 378; 11 Leigh, 471; 4 Rand. 488; 2 Min. Inst. Pt. 1, 821; 3 W. Va. 580; Code, c. 135, s. 4; Code, c. 125 s. 52; 9 W. Va. 372; 86 Va. 354.

BRANNON, JUDGE:

Melville D. Post brought an action of *assumpsit* in the Circuit Court of Ohio county against William M. Carr and Alfred S. Carr. Process was served on William M. Carr, but not on Alfred S. Carr, and as to the latter the case was dismissed. There was no appearance by either defendant, and, when the term of court came on, the court took up the case, and proceeded to ascertain the amount which the plaintiff was entitled to recover, and, having heard the plaintiff's evidence, found that the plaintiff was entitled to recover against William M. Carr five hundred dollars, and rendered judgment. Later in the term, Carr asked the court to set aside the judgment, and allow him to make a defense, which the court refused to do, and from this refusal Carr has sued out this writ of error.

Carr was served with process to answer the action, and had the full time and opportunity given by law to appear at rules, and afterwards a number of days in term to present his defense; but he appeared not, but allowed a conditional judgment and order for inquiry of damages to be entered at rules, and allowed the case to be called and taken up at the next term, and the inquiry of damages to be executed, without defense. Thus, the case, by due procedure, came to an end in final judgment, and the plaintiff had a vested right in his judgment. Clearly it could not be set aside merely on the ground that the defendant asked

it, under principles of common-law procedure, because the entry of judgment discharged the plaintiff from doing further suit with his witnesses in the case. When we say that the record is in the breast of the court to be changed during the term, we only mean that proceedings attested by it have not yet obtained that irrevocable character which places them beyond the power of the court after the term. We only mean that the court can, for good reasons, and under proper circumstances, modify, set them aside, or otherwise affect them during the term. By no means do we mean that a party who has, by due process of law, obtained the final judgment of the law upon his cause, can have his property in that judgment arbitrarily taken from him at the unwarranted behest of his adversary. But were this not so on general principles, our statute would step in, and cut down this power of the court, when it provides, in section 47, chapter 125, Code, that if a defendant against whom judgment has been entered in the office at rules may appear at next term, and plead to issue, it may be set aside; yet it limits this right by saying: "But if the judgment has been entered up in court, or the order for an inquiry of damages has been executed, it shall not be set aside without good cause be shown therefor." Thus, it is very plain that good cause must be shown, and the only question in the construction of this clause is, what is good cause under it? We must apply some legal test. It is an application for new trial, and is to be tested by principles governing applications for new trial in the same court rendering the judgment where the case has gone to the jury undefended. There must be fraud, accident, surprise, mistake, or some adventitious circumstance preventing the party from making defense, excusing his absence; and he must be free from culpable neglect, for some of these circumstances must exist which prudence could not guard against, "and the slightest negligence will defeat the application." 1 Grah. & W. New Trials, 174; 3 Grah. & W. New Trials, 881. Clearly, we ought to apply the rule laid down by this Court in the case where a party fails to take an appeal from a justice within time, and then applies to a circuit court within ninety days; for the cases are parallel

in nature, and the language of the statute on applications for an appeal, where there is "good cause" for his not taking the appeal sooner, is the same as that relative to setting aside judgments by default; and in such case it has been several times held that the "good cause" must be such as would be required to obtain a new trial—that is, fraud, mistake, accident, surprise, or some adventitious circumstance beyond the party's control. *Machine Co.* v. *Floding*, 27 W. Va. 540. Such is the rule, also, where a *certiorari* is asked, instead of appeal, in cases tried by a jury before justices. *Arnold* v. *Lewis County Court*, 38 W. Va. 142 (18 S. E. 476). The same test is applied where a court of equity is asked to grant a new trial in case of a judgment at law. In *Hubbard* v. *Yocum*, 30 W. Va. 740 (5 S. E. 867) the principles governing courts of equity were applied where an appeal is asked of a court where there has been a failure to take it within ten days. That a court of equity, to grant such new trial, requires fraud, accident, mistake, surprise, or some adventitious circumstances, not attributable to the party's negligence, is beyond question, as shown in the case just cited, and *Braden* v. *Reitzenberger*, 18 W. Va. 286, and many others. Bart. Ch. Prac. 42.

Such being the test or principles governing this case, what did Carr show as "good cause" for a new trial in this case? The affidavit filed by the defendant in support of this motion shows substantially the following facts: That he was served with a copy of the summons issued in this case on August 5, 1895, that on August 8, 1895, he mailed a letter containing this copy to Frank A. Durban, of Zanesville, Ohio, who for more than fifteen years had been his general counsel, asking said Durban to enter an appearance for him; that Durban, being absent from Zanesville, did not get the letter until September 6, 1895, the day the judgment complained of was entered; that defendant's home is also in Zanesville, but that, being an oil operator, he is absent from that place most of the time; that he was at home, however, several times, after business hours, between August 8th and September 6th, but made no effort to see his counsel, or to ascertain whether the letter had been received, until the last named date. It appears that Carr

was in Wheeling three several times between day of service of the summons and judgment. He paid no attention further to the case; did not get a reply to the letter from his lawyer, to know whether he could leave his practice in Ohio to attend a case in another state, though weeks elapsed—a fact sufficient to cause him to doubt whether he could rely on the attorney's making a defense. He, in fact, lived in Zanesville, where his attorney lived. Why did he not, in this month's time, see his attorney? Why did he not employ a lawyer in Wheeling? He had a business manager there. Why did he not commit the care of the case to him? The lawyer could not defend the case without his presence, without evidence. Did he not know that he could not? Did he not know that he must himself give him the facts, attend the trial, and personally do the indispensable part of a client, in a case depending not on written testimony, but an action for compensation for services as attorney in lawsuits—a case depending on oral evidence, and that known peculiarly, if not exclusively, to Carr? He chose to give preference to other business, and neglected this. This debars him from relief. He must not depend alone on his attorney's attention to the case. In *Hubbard* v. *Yocum*, 30 W. Va. 755 (5 S. E 867) and *Hill* v. *Bowyer*, 18 Grat. 364, action of parties so relying merely on attorneys to defend their causes is commented upon, and held not grounds for a new trial, because evincing negligence and want of due diligence. They are much like this case in circumstance. Freem. Judgm. § 502. Grah. & W. New Trials, p. 881, note 2, says: "Absence of counsel is rarely grounds of new trial." As to absence of party, the text there says he must establish excuse for absence to the entire satisfaction of the court; he must show good faith and diligence; "in short, that unavoidable accident, such as sudden sickness, or some other circumstance which he could not anticipate, and over which he had no control, intervened and prevented his attendance." "Neither will his default be opened on light grounds." See Bart. Ch. Prac. 49.

Plaintiff in error makes the point that the bill of particulars is too general. He did not appear and move for a more certain one, or object to evidence under it? This is immaterial now, even if too general.

The point that the bond to suspend judgment until an appeal could be asked is in too large a penalty is irrelevant to show whether the judgment refusing a new trial is erroneous.

The order of 26th September, 1895, refusing to set aside the judgment, is affirmed.