582 S.E.2d 756

James Milton COVINGTON and Jeraldine I. Covington, Plaintiffs Below, Appellants,

v.

Michael John SMITH, Walter Lee Forbis, Ryder Truck Rental, Inc., and D.T.F. Trucking, Inc., Defendants Below, Appellees.

No. 30734.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided March 17, 2003.

Concurring Opinion of Chief Justice Starcher July 11, 2003.

Chief Justice STARCHER concurs and reserves the right to file a concurring opinion.

DAVIS, Justice:

The appellants herein and plaintiffs below, James Milton Covington [hereinafter referred to as "Mr. Covington"] and Jeraldine I. Covington [hereinafter referred to as "Mrs. Covington"],[1] appeal from orders entered September 20, 2001, and February 27, 2002, by the Circuit Court of Raleigh County. In its September 20, 2001, order, the circuit court refused the Covingtons' motion to reinstate their lawsuit that it previously had dismissed due to inactivity pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure.[2] By subsequent order, entered February 27, 2002, the circuit court denied the Covingtons' motion to reconsider[3] its September 20, 2001, ruling. On appeal to this Court, the Covingtons claim that the circuit court erred by refusing to reinstate their case when there existed good cause to do so. Upon a review of the parties' arguments, the pertinent authorities, and the record presented for appellate consideration, we reverse the rulings of the Circuit Court of Raleigh County. In sum, we find that the Covingtons demonstrated good cause to support the reinstatement of their lawsuit. Accordingly, we remand this case for further proceedings consistent with this Opinion.

Hamilton D. Skeens, Esq., Brown & Levicoff, P.L.L.C., Beckley, West Virginia, Attorney for the Appellants.

Edgar E. Bibb, III, Esq., Lynch, Mann & Bibb, Beckley, West Virginia, Attorney for the Appellee, Michael John Smith.

Stephen R. Crislip, Esq., Jill M. Obenchain, Esq., Jackson Kelly PLLC, Charleston, West Virginia, Attorneys for the Appellees, Walter Lee Forbis, Ryder Truck Rental, Inc., and D.T.F. Trucking, Inc.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On November 23, 1996, Mr. Covington, who was employed as a truck driver, was driving his tractor trailer on Interstate 64 in Raleigh County, West Virginia, when he was rear-ended by a vehicle driven by the appellee herein and defendant below, Michael John Smith [hereinafter referred to as "Mr.

1. Where appropriate, Mr. and Mrs. Covington will also be referred to collectively as "the Covingtons".

2. For the relevant text of Rule 41(b), see infra note 5.

3. See infra note 6 for the pertinent provisions of W. Va. R. Civ. P. 60(b), which permits a party to seek relief from a circuit court's order.

Smith"]. Immediately following this collision, Mr. Covington parked his vehicle on the shoulder of the interstate and proceeded to retrieve and erect emergency markers around his truck. While doing so, Mr. Covington's truck was hit by a second vehicle, which was driven by the second appellee herein and defendant below, Walter Lee Forbis [hereinafter referred to as "Mr. Forbis"], which caused Mr. Covington to sustain severe personal injuries.

As a result of this chain of accidents and his resultant injuries, Mr. Covington filed a claim for workers' compensation benefits since the injuries he sustained were in the course of and as a result of his employment duties. In conjunction with his workers' compensation claim, Mr. Covington retained counsel in his home state of Alabama. The Covingtons also retained counsel, in Roanoke, Virginia,[4] to file a lawsuit against Mr. Smith, Mr. Forbis, and associated parties, which suit was filed in the Circuit Court of Raleigh County on September 21, 1998. Throughout 1999, Mr. Forbis' counsel deposed various witnesses and filed a motion to compel the production of certain documents. Mr. Covington's attorney deposed defendants Smith and Forbis in August, 1999. Apart from these discovery matters, it appears that the Covingtons' lawsuit remained dormant until the circuit court filed, on October 13, 2000, a notice of its intent to dismiss the action due to such inactivity. Although the Covingtons' counsel received this notice, he failed to inform the Covingtons of the pending dismissal proceedings. On October 31, 2000, the Covingtons' counsel filed a motion alleging the existence of good cause and requesting the court to refrain from dismissing the matter. Among the reasons cited for the delay, counsel indicated that a telephonic scheduling conference had been scheduled

for August 15, 2000, but miscommunications between the parties led to its cancellation. Counsel also explained that he had been unable to devote much time to the Covingtons' lawsuit because he had been engaged in jury trials, in unrelated matters, in February, 2000, and May, 2000, and had had a death in his family in October, 2000.

Despite the protestations of the Covingtons' counsel, the circuit court, by order entered November 16, 2000, dismissed the Covingtons' lawsuit. Counsel communicated this dismissal to the Covingtons by letter dated November 30, 2000. Thereafter, Mr. Covington, through his Alabama attorney, sent numerous letters to his Virginia counsel requesting a status report regarding the reinstatement of his lawsuit. Having received no response to any of his correspondences, Mr. Covington, by letter dated March 13, 2001, discharged his Virginia counsel. Thereafter, on April 4, 2001, the Covingtons retained their present West Virginia counsel to pursue the reinstatement of their lawsuit in the Circuit Court of Raleigh County.

On June 13, 2001, the Covingtons, by their West Virginia counsel, filed a motion to reinstate their lawsuit against Mr. Smith, et al. By order entered September 20, 2001, the circuit court found no good cause existed to reinstate the Covingtons' case and that its earlier ruling dismissing the action, in accordance with W. Va. R. Civ. P. 41(b),[5] due to inactivity was proper. In short, the circuit court ruled that

> [i]t is undisputed that the Plaintiff [Mr. Covington] was not given the notice of dismissal that had been received by his attorney. Plaintiff was thereby deprived by his attorney of the opportunity to assist his attorney in the formulation of a response. . . .

---

4. The Covingtons' Virginia counsel is not the same attorney who is representing them in the instant appeal to this Court.

5. In pertinent part, Rule 41(b) of the West Virginia Rules of Civil Procedure provides that

> [a]ny court in which is pending an action wherein for more than one year there has been no order or proceeding . . . may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued. . . . The court may, on motion, reinstate

on its trial docket any action dismissed under this rule, and set aside any nonsuit that may [be] entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid.

Before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record.

It is readily apparent to the Court that the delay was caused by Plaintiff's former counsel and not by the Plaintiff. Plaintiff tried to get his counsel to attend to the matter, and his counsel neglected it, even to the point of not disclosing to his client that this Court had give[n] notice of an intent to dismiss.

This is not an instance where an otherwise attentive attorney let a case run past the Rule 41 year because of complications associated with the case. Rule 41 allows relief for that, upon a proper showing. This is rather a pattern of neglect, deceit, and misconduct by counsel upon his client that permeates the entire case.

The damage caused to the Plaintiff by this neglect is a matter between Plaintiff and his former counsel, to be resolved by the means appropriate to such disputes.

. . . .

[T]his Court has the duty and responsibility to maintain proper attorney discipline and decorum within a case pending before it. That is accomplished by the requirement, enforced [by] the proper sanction, that an attorney attend properly to a case

6. Actually, the West Virginia Rules of Civil Procedure do not permit a party to file a motion for reconsideration; instead, they allow a party to seek relief from a circuit court's order:

the West Virginia Rules of Civil Procedure do not recognize a "motion for reconsideration." This Court will consider a motion for reconsideration in one of two ways. If a motion is filed within ten days of judgment, the motion is treated as a motion to alter or amend judgment under Rule 59(e). Alternatively, if it is filed more than ten days after entry of judgment, we look to Rule 60(b) to provide the basis for analysis of the review.

*Savage v. Booth*, 196 W.Va. 65, 68, 468 S.E.2d 318, 321 (1996) (footnote omitted). *Accord* Franklin D. Cleckley *et al.*, *Litigation Handbook on West Virginia Rules of Civil Procedure* 982–83 (2002). Given that the Covingtons' motion in this regard was filed more than ten days after the entry of the circuit court's September 20, 2001, order, we will treat it as one filed pursuant to Rule 60(b). West Virginia Rule of Civil Procedure 60(b) states:

[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; ·(2) newly discovered evidence which by due diligence could not

in which he [h]as accepted responsibility, or show good cause why he did not. Good cause for the delay, within the meaning of Rule 41 and the cases that interpret it, has not been shown in this case.

Following this adverse ruling, the Covingtons filed a motion for reconsideration on December 13, 2001,[6] based upon this Court's decision in *Howerton v. Tri–State Salvage, Inc.*, 210 W.Va. 233, 557 S.E.2d 287 (2001) (per curiam). In its February 27, 2002, order, the circuit court again denied the Covingtons' request for relief and determined that this Court's decision in *Howerton* was factually distinguishable from the circumstances surrounding the dismissal of the Covingtons' lawsuit. From these rulings of the circuit court, the Covingtons appeal to this Court.

## II.

## STANDARD OF REVIEW

■ The instant proceeding comes before this Court upon the Covingtons' appeal from orders entered by the circuit court denying their request to reinstate their civil action and refusing their motion for reconsideration of the court's adverse ruling. When a circuit

have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

court dismisses a case due to inactivity in accordance with W. Va. R. Civ. P. 41(b), a motion requesting the court to reinstate the matter, pursuant to W. Va. R. Civ. P. 41(b) and W. Va.Code § 56–8–12 (1923) (Repl.Vol. 1997),[7] rests in the court's sound discretion. "Traditionally, our scope of review, even where reinstatement is timely sought, is limited. It is only where there is a clear showing of an abuse of discretion that reversal is proper." *Dimon v. Mansy*, 198 W.Va. 40, 46, 479 S.E.2d 339, 345 (1996). Thus,

> [a] motion to reinstate a dismissed action under the terms of Code, 56–8–12, is addressed to the sound discretion of the trial court, and, in the absence of a showing of abuse of that discretion, the action of the trial court upon such motion will not be disturbed upon writ of error. *Higgs v. Cunningham*, 71 W.Va. 674, 77 S.E. 273 [ (1913) ].

Syl. pt. 1, *Murray v. Roberts*, 117 W.Va. 44, 183 S.E. 688 (1936). *See also* Syl. pt. 4, in part, *White Sulphur Springs, Inc. v. Jarrett*, 124 W.Va. 486, 20 S.E.2d 794 (1942) ("A trial court, upon a motion to reinstate a suit or action, under Code, 56–8–12, is vested with a sound discretion with respect thereto[.]"); Syl. pt. 2, *Higgs v. Cunningham*, 71 W.Va. 674, 77 S.E. 273 ("Code 1906, ch. 127, sec. 11, does not peremptorily require every dismissal or non-suit to be set aside simply because the court is asked to do so. The court has a sound discretion in the premises.").

Despite the discretionary nature of such a determination, reinstatement is nevertheless proper where the moving party demonstrates the existence of good cause for such relief. "Under W. Va. R. Civ. P. 41(b), in order to reinstate a cause of action which has been dismissed for failure to prosecute, the plaintiff must . . . make a showing of good cause which adequately excuses his neglect in prosecution of the case." Syl. pt. 1, in part,

*Brent v. Board of Trs. of Davis & Elkins Coll.*, 173 W.Va. 36, 311 S.E.2d 153 (1983), *overruled on other grounds by Dimon*, 198 W.Va. 40, 479 S.E.2d 339. Therefore, "[i]n the absence of a showing of good cause in support of a motion to set aside a nonsuit and reinstate the case the ruling of a trial court denying such motion will not be disturbed by an appellate court." Syl. pt. 2, *Nibert v. Carroll Trucking Co.*, 139 W.Va. 583, 82 S.E.2d 445 (1954).

■ Similarly, a circuit court's decision to grant or deny a motion for reconsideration under W. Va. R. Civ. P. 60(b) also warrants deferential review by this Court. " 'A motion to vacate a judgment made pursuant to *Rule* 60(b), W. Va. R.C. P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.' Syl. Pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974)." Syl. pt. 4, *Rose v. Thomas Mem'l Hosp. Found., Inc.*, 208 W.Va. 406, 541 S.E.2d 1 (2000) (per curiam). *See also* Syl. pt. 2, *Rose*, 208 W.Va. 406, 541 S.E.2d 1 (" 'An appeal of the denial of a *Rule* 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order.' Syl. Pt. 3, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).").

Mindful of these standards of review, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

■ On appeal to this Court, the Covingtons complain that the circuit court improperly denied their motion to reinstate their

---

7. W. Va.Code § 56–8–12 (1923) (Repl.Vol.1997), the precursor to the reinstatement provisions contained in Rule 41(b), instructs that

> [a]ny court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or the order of nonsuit entered; but any such order of rein-

statement shall not be entered until the accrued costs in such case shall have been paid. *Accord* W. Va. R. Civ. P. 41(b) (same). *See also Arlan's Dept. Store of Huntington, Inc. v. Conaty*, 162 W.Va. 893, 897, 253 S.E.2d 522, 525 (1979) (observing that "[b]ecause these statutory rules were not 'modified, suspended or annulled' by the West Virginia Rules of Civil Procedure, they remain in effect as rules of court").

lawsuit when, they claim, they had demonstrated good cause to support such reinstatement.[8] During our consideration of the parties' arguments on this point, it has become apparent that the resolution of this issue requires us to answer the following questions: (1) did the Covingtons' motion opposing the circuit court's dismissal of their case preclude them from thereafter moving for its reinstatement and (2) did the Covingtons demonstrate good cause to support the reinstatement of their lawsuit. We will address each of these issues in turn.

### A. Propriety of Motion for Reinstatement after Party has Opposed Dismissal of Case

In his response to the Covingtons' brief, Mr. Forbis [9] contends that because the Covingtons were heard, through their counsel, on their motion opposing the circuit court's notice of dismissal, they were foreclosed from thereafter filing a motion for reinstatement of their case. In this regard, Mr. Forbis suggests that this Court's decision in *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339 (1996), changed the procedural posture of cases facing involuntary dismissal under Rule 41(b). Integral to a court's dismissal of a lawsuit under Rule 41(b), the Court directed that parties should be afforded notice of the court's decision to dismiss the action and an opportunity to be heard thereon. As part of the guidelines attending the notice and opportunity to be heard requirement, this Court stated that "if a motion opposing dismissal has been served, the court shall make

written findings, and issue a written order which, if adverse to the plaintiff, shall be appealable to this Court as a final order[.]" *Dimon*, 198 W.Va. at 50, 479 S.E.2d at 349. In the case *sub judice*, the circuit court noticed the parties of the lawsuit's impending dismissal, and the Covingtons' counsel responded thereto with a motion opposing such dismissal. Because the court's ultimate decision was adverse to the Covingtons, Mr. Forbis argues that it was an appealable order pursuant to *Dimon* and the Covingtons' failure to timely appeal thereunder renders their present appeal improper. Mr. Forbis further construes *Dimon v. Mansy* as permitting a plaintiff to move for reinstatement of his/her case only if he/she has not responded to the court's notice of dismissal. *Dimon, id.* ("[S]hould a plaintiff seek reinstatement under Rule 41(b), the burden of going forward with the evidence and the burden of persuasion *shall be the same as if the plaintiff had responded to the court's initial notice*, and a ruling on reinstatement shall be appealable as previously provided by our rule." (emphasis added)). As the Covingtons' counsel responded to the court's notice of intent to dismiss by filing a motion opposing such dismissal, Mr. Forbis asserts that their subsequent reinstatement motion was improper.

■ The very presentation of an argument of this nature suggests that there exists a modicum of confusion as to the effect of our rulings in the *Dimon* case. Before we revisit *Dimon's* explication of the law on this point,

---

**8.** The Covingtons also assign error to the circuit court's subsequent order denying their "reconsideration" motion. However, their appellate brief does not discuss this issue or provide authority to support their contention that the circuit court's ruling was erroneous. In the absence of such supporting arguments or authority, we deem this assignment of error to have been waived. *See State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only in passing but are not supported with pertinent authority ... are not considered on appeal." (citation omitted)); Syl. pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."). *See also Sale ex rel. Sale v. Goldman*, 208 W.Va. 186, 199–200 n. 22, 539 S.E.2d

446, 459–60 n. 22 (2000) (per curiam) (deeming assignment of error that "is terse and lacks any authority to support it" to have been waived); *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived." (citation omitted)); *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." (internal quotations and citation omitted)).

**9.** "Mr. Forbis" will be used to refer collectively to the arguments advanced jointly by appellees Mr. Forbis; Ryder Truck Rental, Inc.; and D.T.F. Trucking, Inc.

it is instructive to review the procedure by which a case may be dismissed. As it pertains to the case *sub judice*, Rule 41(b) of the West Virginia Rules of Civil Procedure permits a circuit court, *sua sponte*, to dismiss an inactive case from its docket:

[a]ny court in which is pending an action wherein for more than one year there has been no order or proceeding, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued.

W. Va. R. Civ. P. 41(b). Through the dismissal of such cases, courts are able to manage the cases on their dockets thereby promoting judicial economy and preserving the integrity of the judicial system. "The power to resort to the dismissal of an action is in the interest of orderly administration of justice because the general control of the judicial business is essential to the trial court if it is to function." *Dimon v. Mansy*, 198 W.Va. at 45, 479 S.E.2d at 344. In other words, Rule 41(b) serves "as a docket-clearing mechanism which enables trial courts to purge themselves of stale cases, while prodding dilatory plaintiffs to proceed to trial." *Brent v. Board of Trs. of Davis & Elkins Coll.*, 173 W.Va. at 39, 311 S.E.2d at 157. *See also* Syl. pt. 2, *State ex rel. Appalachian Power Co. v. MacQueen*, 198 W.Va. 1, 479 S.E.2d 300 (1996) (" 'Trial courts have the inherent power to manage their judicial affairs that arise during proceedings in their courts, which includes the right to manage their trial docket.' Syllabus Point 2, *B.F. Specialty Co. v. [Charles M.] Sledd [Co.]*, 197 W.Va. 463, 475 S.E.2d 555 (1996)."); *Arlan's Dept. Store of Huntington, Inc. v. Conaty*, 162 W.Va. 893, 897–98, 253 S.E.2d 522, 525 (1979) ("The rules of civil procedure were designed to secure just, speedy and inexpensive determinations in every action. . . . The rules do, however, establish procedures for the orderly process of civil cases as anticipated by W. Va. Const. Art. III, § 10. They operate in aid of jurisdiction and facilitate the public's interest in just, speedy and inexpensive determinations. They vindicate constitutional rights by providing for the administration of justice without denial or delay as required by W. Va. Const. Art. III, § 17.").

Despite this latitude accorded to circuit court judges, the parties affected by this method of case management are also afforded certain procedural protections to ensure that inactive cases are not perfunctorily dismissed when there exists good cause for such dilatoriness. "Before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record." Syl. pt. 2, in part, *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339 (1996). Furthermore,

[i]n carrying out the notice and opportunity to be heard requirements, before a case may be dismissed under Rule 41(b), the following guidelines should be followed: First, when a circuit court is contemplating dismissing an action under Rule 41(b), the court must first send a notice of its intent to do so to all counsel of record and to any parties who have appeared and do not have counsel of record. The notice shall inform that unless the plaintiff shall file and duly serve a motion within fifteen days of the date of the notice, alleging good cause why the action should not be dismissed, then such action will be dismissed, and that such action also will be dismissed unless plaintiff shall request such motion be heard or request a determination without a hearing. Second, any party opposing such motion shall serve upon the court and the opposing counsel a response to such motion within fifteen days of the service of such motion, or appear and resist such motion if it be sooner set for hearing. Third, if no motion is made opposing dismissal, or if a motion is made and is not set for hearing by either party, the court may decide the issue upon the existing record after expiration of the time for serving a motion and any reply. If the motion is made, the court shall decide the motion promptly after the hearing. Fourth, the plaintiff bears the burden of going forward with evidence as to good cause for not dismissing the action; if the plaintiff does come forward with good cause, the burden then shifts to the defendant to show substantial prejudice to it in allowing the case to proceed; if the defen-

dant does show substantial prejudice, then the burden of production shifts to the plaintiff to establish that the proffered good cause outweighs the prejudice to the defendant. Fifth, the court, in weighing the evidence of good cause and substantial prejudice, should also consider (1) the actual amount of time involved in the dormancy of the case, (2) whether the plaintiff made any inquiries to his or her counsel about the status of the case during the period of dormancy, and (3) other relevant factors bearing on good cause and substantial prejudice. Sixth, if a motion opposing dismissal has been served, the court shall make written findings, and issue a written order which, if adverse to the plaintiff, shall be appealable to this Court as a final order; if the order is adverse to the defendant, an appeal on the matter may only be taken in conjunction with the final judgment order terminating the case from the docket. If no motion opposing dismissal has been served, the order need only state the ground for dismissal under Rule 41(b). Seventh, if the plaintiff does not prosecute an appeal of an adverse decision to this Court within the period of time provided by our rules and statutes, the plaintiff may proceed under Rule 41(b)'s three-term rule to seek reinstatement of the case by the circuit court—with the time running from the date the circuit court issued its adverse order. Eighth, should a plaintiff seek reinstatement under Rule 41(b), the burden of going forward with the evidence and the burden of persuasion shall be the same as if the plaintiff had responded to the court's initial notice, and a ruling on reinstatement shall be appealable as previously provided by our rule.

Syl. pt. 3, *Dimon v. Mansy,* 198 W.Va. 40, 479 S.E.2d 339.

In spite of these explicitly detailed procedures, it is apparent that the actual application thereof to individual cases remains somewhat murky. The Forbis appellees construe this holding as requiring an aggrieved plaintiff to choose between two courses of action: (1) actively opposing the circuit court's notice of intent to dismiss his/her case and, in response to such dismissal, appealing to this Court or (2) not responding to the circuit court's notice of intent to dismiss his/her case and, in response to such dismissal, filing a motion for reinstatement thereof. To support this position, Mr. Forbis cites no authority other than the language in *Dimon* which he has construed in this manner, and, indeed, we cannot find any.

The above-described procedure for dismissing cases pursuant to Rule 41(b) does not exist in a vacuum, however, as Mr. Forbis' argument would seem to suggest. In addition to considering the methodology announced in *Dimon,* we must simultaneously be cognizant of the corresponding process whereby an aggrieved plaintiff is permitted to request the reinstatement of his/her case. Both W. Va.Code § 56–8–12 and W. Va. R. Civ. P. 41(b) expressly permit a plaintiff whose case has been dismissed to move for its reinstatement:

> The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may [be] entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid.

W. Va. R. Civ. P. 41(b). *Accord* W. Va.Code. § 56–8–12.

Construing together the dismissal procedures enunciated in *Dimon* with the reinstatement procedures set forth in W. Va. R. Civ. P. 41(b) and W. Va.Code § 56–8–12, we cannot reconcile these directives to reach the result urged by Mr. Forbis. We have long held that it is "the duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results." *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990). *See also* Syl. pt. 2, *Conseco Fin. Serv'g Corp. v. Myers,* 211 W.Va. 631, 567 S.E.2d 641 (2002) (" 'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute,

when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)."); Syl. pt. 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938) ("Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made."). This same reasoning applies to our interpretation of our own procedural rules and judicial holdings. *See, e.g., State v. Jenkins,* 195 W.Va. 620, 625 n. 5, 466 S.E.2d 471, 476 n. 5 (1995) ("[T]his Court has complete authority to determine how the *West Virginia Rules of Evidence* shall be construed pursuant to its constitutional rule-making authority." (citations omitted)). *See also* W. Va. Const. art. VIII, § 3 (directing that the Supreme Court of Appeals of West Virginia "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process, practice and procedure, which shall have the force and effect of law"); Syl. pt. 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988) ("Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law.").

To interpret our holding in *Dimon* as urged by Mr. Forbis would require us to completely ignore the corresponding procedure permitting an aggrieved plaintiff to seek reinstatement. Furthermore, neither statement of this procedure conditions its availability upon a plaintiff's agreement to sit idly by while the court rules adversely to him/her by following through on its intent to dismiss his/her lawsuit. *See* W. Va.Code § 56–8–12; W. Va. R. Civ. P. 41(b). Rather, we generally admonish parties who have not raised the proper objections that their failure to do so could result in the waiver of any objections they may have had to the lower court's ruling. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 989 (1st Cir.1988) ("Courts, like the Deity, are frequently moved to help those who help themselves."); *Powderidge Unit Owners Ass'n v. Highland*

*Props., Ltd.,* 196 W.Va. 692, 703, 474 S.E.2d 872, 883 (1996) ("The law ministers to the vigilant, not those who slumber on their rights." (internal quotations and citations omitted)); *State v. LaRock,* 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) ("One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." (internal quotations and citations omitted)); *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996) ("The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." (citation omitted)). *See also Hanlon v. Logan County Bd. of Educ.,* 201 W.Va. 305, 316, 496 S.E.2d 447, 458 (1997) ("A party simply cannot acquiesce to, or be the source of, an error during proceedings before a tribunal and then complain of that error at a later date." (citations omitted)); *State v. Asbury,* 187 W.Va. 87, 91, 415 S.E.2d 891, 895 (1992) (per curiam) ("Generally the failure to object constitutes a waiver of the right to raise the matter on appeal.").

Finally, the interpretation urged by Mr. Forbis completely dismisses the syllabus point's accompanying text. Immediately before uttering the sentence upon which Mr. Forbis bases his argument, we expressly held that "if the plaintiff does *not* prosecute an appeal of an adverse decision to this Court within the period of time provided by our rules and statutes, the plaintiff *may* proceed under Rule 41(b)'s three-term rule to seek reinstatement of the case by the circuit court[.]" Syl. pt. 3, in part, *Dimon,* 198 W.Va. 40, 479 S.E.2d 339 (emphasis added). Thus, rather than requiring a plaintiff to ultimately choose between an appeal and a motion for reinstatement, as is urged by Mr. Forbis, this holding expressly recognizes that either alternative is available to the aggrieved party as long as he/she adheres to the requisite temporal requirements. *See, e.g.,* W. Va. R.App. P. 3(a) (requiring party to file appeal from final judgment within four months of its entry); W. Va. R. Civ. P. 41(b)

(directing party seeking reinstatement of his/her case to file motion for reinstatement "within three terms after entry of the order of dismissal or nonsuit"). In order to clarify this tenet in *Dimon*, then, we hold that the filing of a motion opposing the dismissal of a case does not prevent the aggrieved plaintiff from thereafter filing a motion requesting the reinstatement of the dismissed case as long as the motion for reinstatement is timely filed within three terms of court after the entry of the dismissal order as required by W. Va.Code § 56–8–12 (1923) (Repl.Vol.1997) and W. Va. R. Civ. P. 41(b). *But see* Syl. pt. 1, *Arlan's Dept. Store of Huntington, Inc. v. Conaty*, 162 W.Va. 893, 253 S.E.2d 522 ("When a party fails to make a reinstatement motion within the time period prescribed by R.C.P. 41(b) and W. Va.Code, 56–8–12, such party is not entitled to reinstatement of a case to the docket and the court is without power to grant such relief, except where the parties consent, or where good cause is shown such as fraud, accident, or mistake.").

Applying this holding to the facts presently before us, we find that the fact that the Covingtons' Virginia counsel filed a motion opposing the circuit court's dismissal of their case did not preclude them from subsequently moving for reinstatement of their dismissed lawsuit. Because the Covingtons elected to move for the reinstatement of their case rather than immediately pursuing an appeal, they were required to file their motion within three terms of the court's entry of its dismissal order on November 16, 2000. Pursuant to the West Virginia Trial Court Rules, the terms of court for the Circuit Court of Raleigh County commence "on the second Monday in January, May, and September." W. Va. Trial Ct. R. 2.10. As the Covingtons filed their motion for reinstatement on June 13, 2001, they satisfied the temporal requirement and timely filed their reinstatement motion. Accordingly, their subsequent appeal from the circuit court's order disposing of said motion is properly before this Court.

### B. Good Cause to Support Reinstatement of Dismissed Case

Having found that the Covingtons' appeal is properly before us, we must now consider their argument that the circuit court erroneously denied their motion for reinstatement when they demonstrated good cause in support thereof. We previously determined that the Covingtons timely filed their reinstatement motion within three terms of the court's entry thereof. For reinstatement to be granted, however, the Covingtons must also demonstrate good cause to excuse the inactivity for which the circuit court deemed dismissal to be warranted.

"Under W. Va. R. Civ. P. 41(b), in order to reinstate a cause of action which has been dismissed for failure to prosecute, the plaintiff must move for reinstatement within three terms of entry of the dismissal order *and* make a showing of good cause which adequately excuses his neglect in prosecution of the case." Syl. Pt. 1, *Brent v. Board of Trustees of Davis & Elkins College*, 173 W.Va. 36, 311 S.E.2d 153 (1983).

Syl. pt. 1, *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339 (1996) (emphasis added). *Accord Brent*, 173 W.Va. at 39, 311 S.E.2d at 157 ("Rule 41(b) does not ... dispense with a showing of good cause in order for the plaintiff to be entitled to reinstatement. This Court has always required good cause to be shown for reinstatement." (citations omitted)); *Hutchinson v. Mitchell*, 143 W.Va. 280, 286, 101 S.E.2d 73, 77 (1957) (per curiam) ("One can not refuse to prosecute or defend and then ask to do so without showing why he thus acts so inconsistently." (internal quotations and citation omitted)). "In the absence of a showing of good cause in support of a motion to set aside a nonsuit and reinstate the case the ruling of a trial court denying such motion will not be disturbed by an appellate court." Syl. pt. 2, *Nibert v. Carroll Trucking Co.*, 139 W.Va. 583, 82 S.E.2d 445 (1954).

When determining whether an aggrieved plaintiff has demonstrated good cause sufficient to warrant the reinstatement of a dismissed case, the reviewing court must not only consider the plaintiff's evidence of good cause but also the defendant's submissions regarding the substantial prejudice he/she

would endure if the dismissed case were reinstated.

> [T]he plaintiff bears the burden of going forward with evidence as to good cause for not dismissing the action; if the plaintiff does come forward with good cause, the burden then shifts to the defendant to show substantial prejudice to it in allowing the case to proceed; if the defendant does show substantial prejudice, then the burden of production shifts to the plaintiff to establish that the proffered good cause outweighs the prejudice to the defendant.

Syl. pt. 3, in part, *Dimon*, 198 W.Va. 40, 479 S.E.2d 339. Furthermore,

> [T]he court, in weighing the evidence of good cause and substantial prejudice, should also consider (1) the actual amount of time involved in the dormancy of the case, (2) whether the plaintiff made any inquiries to his or her counsel about the status of the case during the period of dormancy, and (3) other relevant factors bearing on good cause and substantial prejudice.

*Id. Accord Evans v. Gogo*, 185 W.Va. 357, 359, 407 S.E.2d 361, 363 (1990) (per curiam) ("In order to determine if the court abused its discretion in failing to reinstate the present case, we must examine the reasons given for the delay, and the possible prejudicial effect of the delay on the defendants.").

To assess whether a plaintiff has demonstrated good cause in a particular case requires the reviewing court to conduct a factual inquiry.

> Good cause is necessarily fact specific. Consequently, no rigid rule should be crafted to determine good cause.... [H]owever, ... a threshold exists for what may be considered good cause. The "'good cause' requirement ... 'is not a mere formality.'" *State ex rel. Letts by Letts v. Zakaib*, 189 W.Va. 616, 618, 433 S.E.2d 554, 556 (1993) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 242, 13 L.Ed.2d 152[, 163] (1964)). Establishing good cause "puts the burden on the party seeking relief to show some *plainly adequate* reason therefor[,]" not merely *any reason*. *AT & T Communications of West Virginia, Inc. v. Public Serv.*

*Comm'n of West Virginia*, 188 W.Va. 250, 253, 423 S.E.2d 859, 862 (1992) (emphasis added) [ (internal quotations and citations omitted) ]. Our jurisprudence has long "held that ... 'good cause can only appear by showing ... some ... circumstance beyond the control of the party, and free from neglect on his part.'" *Winona Nat'l Bank v. Fridley*, 122 W.Va. 479, 481, 10 S.E.2d 907, 908 (1940) (quoting Syl. pt. 1, [in part,] *Post v. Carr*, 42 W.Va. 72, 24 S.E. 583 (1896)).

*Plummer v. Workers' Comp. Div.*, 209 W.Va. 710, 717, 551 S.E.2d 46, 53 (2001) (Davis, J., dissenting). *Accord* Syl. pt. 1, in part, *Plumley v. May*, 140 W.Va. 889, 87 S.E.2d 282 (1955) (holding that good cause can be established "by showing some adventitious circumstance beyond [the aggrieved party's] control" and that he/she "was free from neglect"); Syl., in part, *Winona Nat'l Bank v. Fridley*, 122 W.Va. 479, 10 S.E.2d 907 (holding that, to establish good cause, the aggrieved party "must ... show[ ] ... fraud, accident, mistake, surprise, or other adventitious circumstance beyond his control, and that he was free from any neglect in relation thereto"). *See also* Syl. pt. 2, in part, *Plumley*, 140 W.Va. 889, 87 S.E.2d 282 ("'An adventitious circumstance which may afford good cause ... is one which is unusual, unexpected, beyond the control of the movant, and free from his neglect.' Syllabus, [in part,] *Rollins v. North River Insurance Co.*, 107 W.Va. 602[, 149 S.E. 838 (1929) ].").

█ Under the facts of the case *sub judice*, we find that the circuit court abused its discretion in finding that the Covingtons had not presented ample evidence to warrant the reinstatement of their case. This conclusion is not one we arrive at lightly. Only where we are left with a firm conviction that an error has been committed may we legitimately overturn a lower court's discretionary ruling.

> "Where the law commits a determination to a trial judge and his discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire to reach a different result, but by a firm

conviction that an abuse of discretion has been committed."

*Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970) (quoting *Brunner v. United States,* 190 F.2d 167, 170 (9th Cir.1951), *cert. granted,* 342 U.S. 917, 72 S.Ct. 364, 96 L.Ed. 685, *rev'd,* 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332 (1952) (per curiam)) (additional citation omitted).

The extent of this discretionary authority, however, must be delimited with care, for there is always the unseemly danger of overreaching when the judiciary undertakes to define its own power and authority. Guided by this limitation, we have suggested that a circuit court's sanction authority be a reasonable response to the problems and needs that provoked its use.... In other words, a court's authority to issue dismissals as a sanction must be limited by the circumstances and necessity giving rise to its exercise. The sanction of dismissal with prejudice for the lack of prosecution is most severe to the private litigant and could, if used excessively, disserve the dignitary purpose for which it is invoked....

Because of the harshness of the sanction, a dismissal with prejudice should be considered appropriate only in flagrant cases. Indeed, we recognize that dismissal based on procedural grounds is a severe sanction which runs counter to the general objective of disposing cases on the merit....

*Dimon,* 198 W.Va. at 45–46, 479 S.E.2d at 344–45 (citation omitted). *Accord Howerton v. Tri–State Salvage, Inc.,* 210 W.Va. 233, 236, 557 S.E.2d 287, 290 (2001) (per curiam) ("Because dismissing an action for failure to prosecute is such a harsh sanction, dismissal with prejudice is appropriate only in 'flagrant' cases." (citation omitted)).

■ Based upon the record presently before us, we are firmly left with the conviction that an error has been committed as we are not convinced that the inactivity in the instant proceeding was so egregious as to necessitate the sanction of dismissal. In its September 20, 2001, order denying reinstatement, the circuit court recounted the numerous measures the Covingtons undertook to stay abreast of the progress of their lawsuit:

The Plaintiff's [Mr. Covington's] affidavit of June 6, 2001, shows that he attempted on numerous occasions to make inquiry of his former attorney [Virginia counsel], Wayne Inge, and to comply with his instructions. He participated in the discovery process and gave his deposition. Plaintiff attempted to contact his former attorney several times. He made 91 telephone calls from January of 1998 to November of 2000, in an effort to ascertain the status of his case.... His former attorney returned only a dozen of those calls.

Plaintiff drove on two separate occasions from his home in Alabama to Mr. Inge's law offices in Virginia to speak to him about the case. During one of those visits, Mr. Inge told Plaintiff that he had been very busy but assured him that the case "was moving along as it was supposed to be and he was going to get the case settled."

Plaintiff was not notified by his former attorney until November 30, 2000 that the Court had filed a Notice of Intent to Dismiss on October 13, 2000, or had issued an order dismissing the Plaintiffs' case on November 16, 2000. Under Rule 41(b), before a court may dismiss an action, notice and opportunity to be heard must be given to all parties of record. That notice was communicated by the Court to Plaintiffs' counsel, and not to Plaintiff.

After realizing that his attorney was not attempting to have his case reinstated, Plaintiff then discharged Mr. Inge and retained a new firm, Brown & Levicoff [present West Virginia counsel].

These measures undertaken by the Covingtons are precisely what this Court contemplated in its articulation of the type of diligence expected of parties in the prosecution of their lawsuits:

[T]he determination [of] whether the plaintiff has failed to move the case in a reasonable manner is a discretionary call for the circuit court.... It is equally clear that *it is the plaintiff's obligation to move his or her case to trial,* and where the plaintiff fails to do so in a reasonable manner, the

case may be dismissed as a sanction for the unjustified delay. To be clear, we squarely hold that *a plaintiff has a continuing duty to monitor a case from the filing until the final judgment,* and where he or she fails to do so, the plaintiff acts at his or her own peril.

*Dimon,* 198 W.Va. at 45, 479 S.E.2d at 344 (emphasis added). Under the facts recounted above, we find that the Covingtons most certainly have fulfilled their "continuing duty to monitor [their] case," *id.,* and that they definitely did not contribute to the inactivity of their case for which the circuit court held them accountable. Not only did Mr. Covington make himself available to be deposed, but he also repeatedly attempted to communicate with his counsel and visited his attorney's office. The fact that the Covingtons' Virginia counsel rebuffed these communications was not due to the Covingtons' neglect or dereliction of duty to monitor their case, but due to their attorney's failure to litigate their lawsuit. Indeed, the circuit court even recognized that

> [i]t is readily apparent to the Court that the delay was caused by Plaintiff's former counsel and not by the Plaintiff. Plaintiff tried to get his counsel to attend to the matter, and his counsel neglected it, even to the point of not disclosing to his client that this Court had give[n] notice of an intent to dismiss. . . .
>
> This is . . . a pattern of neglect, deceit, and misconduct by counsel upon his client that permeates the entire case.

Although the appellees have indicated that they would be prejudiced by the reinstatement of this case due to the passage of time, we cannot, in good conscience, find that such prejudice is so great as to outweigh the harm the Covingtons would suffer if the dismissal of their case were to stand. Accordingly, we reverse the contrary rulings of the Circuit Court of Raleigh County and remand this case for further proceedings consistent with this Opinion.

In closing, we wish to speak briefly on the inattentiveness of the Covingtons' former counsel to the prosecution and maintenance of his clients' lawsuit. As a general rule, attorneys serve as conservators or protectors of their clients' legal rights and act to safeguard their clients' interests. Correspondingly, clients entrust their attorneys with their legal well-being and expect their counsel to possess a certain degree of skill and proficiency in understanding and adhering to the law applicable to their particular case. *See, e.g., Lawyer Disciplinary Bd. v. Friend,* 200 W.Va. 368, 373, 489 S.E.2d 750, 755 (1997) (per curiam) ("An attorney occupies a position of trust with regard to his or her client."); *Committee on Legal Ethics of West Virginia State Bar v. White,* 176 W.Va. 753, 756, 349 S.E.2d 919, 922 (1986) (per curiam) ("The client comes to the attorney trusting in his expertise and honesty."). Sadly, though, the Covingtons' first counsel neither appreciated the responsibility of representing his clients nor complied with the procedural rules by which the Covingtons' lawsuit was required to proceed. Although it is commonplace for attorneys to institute court proceedings, the clients who seek their wisdom, advice, and assistance are not as well versed in the law and often tread the waters of litigation with much fear and trepidation. Particularly in such circumstances, attorneys should be mindful of the need to maintain regular communication with their clients to apprize them of the status of their litigation. *See* W. Va. R. Prof'l Conduct 1.4(a-b) ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. . . . A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). It goes without saying that even these certain minimum standards were not met by the Covingtons' former counsel as they did not even learn of the pendency of the dismissal proceedings until after the court had dismissed their case from its docket.

Apart from this communication requirement, attorneys are also expected to demonstrate competency and diligence in the representation of their clients. *See, e.g.,* W. Va. R. Prof'l Conduct 1.1 ("A lawyer shall provide competent representation to a client."); *Buckler v. Buckler,* 195 W.Va. 705, 711, 466 S.E.2d 556, 562 (1995) (per curiam) ("Rules

1.1 and 1.3 of the West Virginia Rules of Professional Conduct require an attorney to provide competent representation to a client and to act with reasonable diligence in protecting the interests of the client." (citation omitted)); *Brent v. Board of Trs. of Davis & Elkins Coll.*, 173 W.Va. at 42, 311 S.E.2d at 160 ("[A]ll lawyers owe to their clients the duty to be properly diligent in the prosecution ... of a case.... This duty includes the obligation to keep informed of the progress of a case so that whatever actions are necessary to protect a client's interests may be taken." (citation omitted)). In this regard, we have repeatedly recognized that

> " '[t]he relationship of attorney-at-law and client is of the highest fiduciary nature, calling for the utmost good faith and diligence on the part of such attorney.' Syllabus Point 4, *Bank of Mill Creek v. Elk Horn Coal Corp.*, 133 W.Va. 639, 57 S.E.2d 736 (1950)." Syllabus Point 2, *Rodgers v. Rodgers*, 184 W.Va. 82, 399 S.E.2d 664 (1990).

Syl. pt. 3, *Committee on Legal Ethics of The West Virginia State Bar v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993). Again, however, this standard was not met as the Covingtons' former counsel repeatedly failed to prosecute their lawsuit, which inaction ultimately resulted in the court's dismissal thereof.

In light of these transgressions, errors, and omissions, we find it necessary to refer this matter to the Office of Disciplinary Counsel for further review, in accordance with our obligation to do so pursuant to Rule 8.3(a) of the West Virginia Rules of Professional Conduct and Canon 3D(2) of the Code of Judicial Conduct. *See* W. Va. R. Prof'l Conduct 8.3(a) ("A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."); W. Va.Code of Jud. Conduct Canon 3D(2) ("A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct should take appropriate action. A

judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority."). *See also Gum v. Dudley*, 202 W.Va. 477, 491, 505 S.E.2d 391, 405 (1997) (similarly referring a matter to the Office of Disciplinary Counsel for further proceedings). Accordingly, we direct the Clerk of the Supreme Court of Appeals to transmit a certified copy of this Opinion to that tribunal.

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the orders entered September 20, 2001, and February 27, 2002, by the Circuit Court of Raleigh County, and remand this case for further proceedings consistent with this Opinion.

Reversed and Remanded.

STARCHER, Chief Judge, concurring.

(Filed July 11, 2003)

The facts of this case are unfortunate: the plaintiff's case got dismissed because of the plaintiff's attorney's inaction or procrastination. Through sloth, the attorney simply did not diligently prosecute the plaintiff's case. A frustrated circuit court dismissed the plaintiff's complaint, and chose to shift the burden for the plaintiff's losses from the potentially negligent tortfeasor to the slothful attorney.

The majority opinion aptly assesses the circuit court's decision to dismiss the case under our existing abuse of discretion standards, and concludes that in this case the circuit court abused its discretion in not reinstating the plaintiff's complaint.

I write separately to address a legal position raised by the appellants in their briefs, but not discussed by the majority opinion. The appellants argued that this Court should adopt a rule such that an attorney's inexcusable, extreme neglect, which is so severe that it amounts to positive misconduct, cannot

impair or destroy a client's cause of action. I agree.

A problem that currently exists in the legal profession is that a lawyer who is most likely to "drop the ball" and fail to diligently prosecute a client's case is also most likely to be unable, or simply not bother, to purchase legal malpractice insurance. The end result is that when a circuit court, like in this case, dismisses a case due to the lawyer's inactivity, the client is left with recourse against a lawyer with few assets. In other words, the client ends up suffering.

California acknowledged this problem in the 1960s, and concluded that inaction and sloth by an attorney should not be grounds for a circuit court to inflict suffering upon an innocent client of the attorney, by dismissing the client's case. In *Daley v. County of Butte*, 227 Cal.App.2d 380, 38 Cal.Rptr. 693 (1964), an intermediate court of appeals examined a situation where the plaintiff's lawyer filed a lawsuit, and then dawdled for nearly two years, only sporadically doing discovery or filing pleadings. When the plaintiff's lawyer failed to show up for several scheduled court hearings, the circuit court dismissed the plaintiff's complaint due to inactivity.

The court recognized the general rule—similar to that in this State—that the "general doctrine charges the client with the neglect of his attorney but gives him redress against the latter." 227 Cal.App.2d at 391, 38 Cal.Rptr. at 700. However, the court went on to alter this harsh rule, holding that "there are exceptional cases in which the client, relatively free from personal neglect, will be relieved of a default or dismissal attributable to the inaction or procrastination of his counsel." *Id.* The court found that the plaintiff's attorney's

> ... neglect was inexcusable and extreme, amounting to positive misconduct. [The attorney's] consistent and long continued inaction was so visibly and inevitably disastrous, that his client was effectually and unknowingly deprived of representation.
> By his refusal to get on with the lawsuit or get out of it, [the plaintiff's attorney] inflicted severe damage on his client's case. She had legal representation only in a

nominal and technical sense.... Under these unusual circumstances, where the client was unknowingly deprived of effective representation, she will not be charged with responsibility for the misconduct of her nominal counsel of record.

227 Cal.App.2d at 391–92, 38 Cal.Rptr. at 700.

The court then stated the rule—known as the "positive misconduct" rule—that where an attorney's inaction rises to a level of active, positive misconduct, the "attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action." 227 Cal.App.2d at 391, 38 Cal.Rptr. at 700. The reasoning for such a rule is obvious:

> Clients should not be forced to act as hawklike inquisitors of their own counsel, suspicious of every step and quick to switch lawyers. The legal profession knows no worse headache than the client who mistrusts his attorney. The lay litigant enters a temple of mysteries whose ceremonies are dark, complex and unfathomable. Pretrial procedures are cabalistic rituals of the lawyers and judges who serve as priests and high priests. The layman knows nothing of their tactical significance. He knows only that his case remains in limbo while the priests and high priests chant their lengthy and arcane pretrial rites. He does know this much: that several years frequently elapse between the commencement and trial of lawsuits. Since the law imposes this state of puzzled patience on the litigant, it should permit him to sit back in peace and confidence without suspicious inquiries and without incessant checking on counsel.

227 Cal.App.2d at 391–92, 38 Cal.Rptr. at 700–701.

The California Supreme Court adopted the positive misconduct rule stated in *Daley* in *Carroll v. Abbott Laboratories, Inc.*, 32 Cal.3d 892, 187 Cal.Rptr. 592, 654 P.2d 775 (1982). The court stated the general rule that a client is charged with the neglect of his counsel, and that the client's usual redress for that neglect is an action for malpractice.

However, an exception to this general rule has developed. Excepted from this rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct,* and the person seeking relief is relatively free from negligence. The exception is premised upon the concept the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship,* and for this reason his negligence should not be imputed to the client.

187 Cal.Rptr. 592, 654 P.2d at 778 (emphasis in original). The court went on to state that "[t]he issue, therefore, becomes whether counsel's conduct amounted to 'positive misconduct' by which plaintiff was 'effectually and unknowingly deprived of representation.'" *Id. In accord, Lords v. Newman,* 212 Mont. 359, 688 P.2d 290, 294–95 (1984) (holding that when case is dismissed due to attorney negligence, "no great abuse of discretion need be shown to warrant reversal" because the "court has been hesitant to impute the neglect of an attorney to his client; and has been loathe to permit this neglect to bar a hearing on the merits."); *Staschel v. Weaver Bros. Ltd.,* 98 Nev. 559, 655 P.2d 518, 519 (1982) ("To characterize [the attorney's] failure to represent his client as 'inexcusable neglect' would be charitable but hardly candid. His dereliction of the professional obligations owed appellant constituted actual misconduct."). *See generally,* S. Bernstein, Annotation, *Attorney's Inaction as Excuse for Failure to Timely Prosecute Action,* 15 A.L.R.3d 674 (1968).

I agree with the majority's decision to reinstate the plaintiffs' claims in the instant case; I simply would have gone the extra step, and adopted the "positive misconduct" rule, so that in the future circuit courts will hesitate to punish innocent litigants for the procrastination of their attorneys.