IN RE ESTATE OF JAMES C. TUCKER.
COMMERCE TRUST COMPANY, APPELLANT, V. ESTATE OF
JAMES C. TUCKER ET AL., APPELLEES.

FILED FEBRUARY 14, 1935. No. 29118.

*Flansburg, Lee & Sheldahl,* for appellant.

*Sackett & Brewster, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

EBERLY, J.

This is an appeal by Commerce Trust Company from a judgment entered in the district court for Gage county in favor of the First Trust Company of Lincoln, Nebraska (executor under the will of James C. Tucker, deceased), and Sarah E. Tucker, objectors and appellees, denying appellant's application for further time for the filing and determination of its claim against such Tucker estate. This action originated on a demand based on an obligation in the nature of a written contract of guaranty executed

by James C. Tucker, deceased, and delivered to the Commerce Trust Company of Lincoln, Nebraska, wherein was guaranteed the payment to the Commerce Trust Company of certain mortgage bonds in accordance with their terms, issued by and upon the properties of the Lutheran Hospital Association of Beatrice, Nebraska.

It appears that James C. Tucker, the deceased, a resident of Beatrice, Nebraska, died there on July 3, 1931. His will was admitted to probate, after due notice of publication, on July 31, 1931.

By an order made and entered by the county court of Gage county in said cause, it was directed that three months be allowed creditors to present their claims against said estate from September 1, 1931, and, pursuant thereto, notice to creditors setting forth this fact and the dates on which claims so filed would be heard by the county court was published in the Beatrice Daily Sun of Beatrice, Nebraska, in each and every Monday issue of said newspaper for three successive weeks, the last publication being on August 31, 1931.

Claims thus filed were heard and determined, and a decree barring unfiled claims against this estate was duly entered in said cause by the county court on December 2, 1931. Final report of the executor and petition for final settlement of its accounts was filed January 29, 1932. The day fixed for hearing on this petition for final settlement of the estate was February 23, 1932. Final distribution had not been made at the time of the commencement of the instant proceeding.

On March 1, 1932, and within the statutory three months after the expiration of the time limited by the county court for filing claims against the estate, claimant filed its application for leave to file its claim and fix a date for hearing thereon. This claim set forth as a part of the application was in the sum of $2,125, based on the written guaranty of the mortgage bonds, and which, it was alleged, accrued, or would accrue pursuant to the terms of the guaranty, subsequent to the expiration of the time

limited for filing claims against the estate of the deceased. It was also alleged that claimant's place of business was at Lincoln, Nebraska; that it had no knowledge of the death of James C. Tucker, or of the administration of his estate, or of the time limited for filing claims against his estate, until January 13, 1932; and that the failure of claimant to learn these facts could not have been avoided.

On March 3, 1932, the objectors filed answer and objections to this application being granted. In this pleading facts concerning the regular administration of the estate were set forth, and the right of applicant to relief was challenged. Upon a hearing the county court determined "that no good cause has been shown by the applicant to open or set aside the said decree barring the filing of claims herein, and to permit the applicant to file its alleged claim against said estate," and denied any relief to applicant. On appeal to the district court, and a trial there *de novo*, relief was again denied the claimant. This matter, on appeal, is now presented to this court for its determination.

While, as between the parties to this appeal, there is at least an apparent dispute as to the dates when defaults in the payment of the bonds guaranteed occurred, and thereby the guaranty thereof became absolute so far as immediate payment was concerned, yet the fact of the due execution of the written guaranty in suit, its validity, and the further fact that the mortgages guaranteed were in default at the time of trial seem not to be in substantial controversy. In truth, the record in its present form discloses a valid unpaid claim in behalf of applicant, and the controlling question on appeal appears to be as to the right of applicant to have a hearing thereon and the due allowance thereof at the time of its presentation to the county court of Gage county, in view of the terms of our statute of nonclaim. That statute, so far as applicable to the present controversy, embraces the following provisions:

Section 30-601, Comp. St. 1929: "When letters testamentary or of administration, or of special administration

shall be granted by any court of probate, or during any appeal from such order, it shall be the duty of the judge of said court to receive, examine, adjust, and allow all lawful claims and demands of all persons against the deceased: Provided, said judge shall within forty days after the issuance of such letters testamentary or of administration, give notice of the date of the hearing of claims against the deceased and the limit of time for the presentation of claims by creditors, which notice shall be given by posting in four public places in said county, or by publication in a legal newspaper of said county three successive weeks, or in any manner which the court may direct."

Section 30-603: "The court shall allow such time as the circumstances of the case shall require for the creditors to present their claims for examination and allowance, which time shall not in the first instance exceed eighteen months nor be less than three months, and the time allowed shall be stated in the order."

Section 30-604: "The court may extend the time allowed to creditors to present their claims, as the circumstances of the case may require; but not so that the whole time shall exceed two years."

Section 30-605: "On the application of a creditor who has failed to present his claim, if made within three months after the expiration of the time previously allowed, the court may for good cause shown allow further time not exceeding three months for the filing and determination of such claim, upon the notice prescribed in the preceding sections of this chapter, in which he shall give notice to parties interested of the time and place of the hearing of such claims."

Section 30-609: "Every person having a claim or demand against the estate of a deceased person whether due or to become due, whether absolute or contingent, who shall not after the giving notice as required in this chapter exhibit his claim or demand to the judge within the time limited by the court for that purpose, shall be forever barred from recovering on such claim or demand, or setting off the same in any action whatever;" etc.

All questions as to the regularity of the administration of this estate, and the proper giving of the notice required, are foreclosed by the record before us. Applicant having filed its application "within three months after the expiration of the time previously allowed" creditors to file their claims against this estate, its right to further and additional time must be determined by the proper construction of the sections of our statute above quoted, and particularly the interpretation of the words "good cause" as employed in section 30-605.

In other words, do the allegations of claimant's application, and proof adduced in support thereof, entitle it to "further time not exceeding three months for the filing and determination of such claim" as for "good cause shown?"

The use of the words "good cause," as a condition upon which statutory rights may depend, or upon which relief under the terms of legislative provisions may be conditioned, is not an infrequent device of the lawmakers. These words are noted by Blackstone in his Commentaries in connection with the writ of mandamus. 2 Cooley's Blackstone (3d ed.) 264.

Among other matters of legislation in connection with which the term under consideration is employed are the following:

Necessity of "good cause" to secure a review. *Jones v. Curling*, 13 Q. B. Div. (Eng.) 262; or, "good cause" for transferring proceedings. *In re Laxon & Co.* (1892) 3 Ch. Div. (Eng.) 31.

It is also to be noted that usually, where a statute directs that a court may do a thing on "good cause" shown, irrespective of the connection, the force of this language thus employed is to vest in the tribunal to which directed a judicial discretion in the matter or thing to which it relates. *Kerchner v. Singletary*, 15 S. Car. 535; *Kendall v. Briley*, 86 N. Car. 56; *People v. Sessions*, 62 How. Pr. (N. Y.) 415. See, also, *Ruffner v. Love*, 24 W. Va. 181, 185; *Hubbard v. Yocum*, 30 W. Va. 740; *Jones v. Curling,*

13 Q. B. Div. (Eng.) 262; *Huxley v. West London Extension R. Co.*, 14 App. Cas. (Eng.) 26; *Whitcher v. Benton*, 50 N. H. 25; *Green v. Goodloe*, 7 Mo. 25.

It is quite evident that from the consideration of these cases, arising under statutes relating to different subjects, in which the words "good cause" are incorporated, and wherein that which constitutes "good cause" is not stated nor definitely defined, the proper application thereof must depend on the circumstances of each case, and be determined by the sound discretion of the court. But such cases require the exercise of a proper judicial discretion.

In *Felts v. Boyer*, 73 Or. 83, 95, in construing a statute which provided in substance that a defendant, upon good cause shown, and upon such terms as may be proper, may be allowed to defend after judgment, and within one year after the entry of such judgment, on such terms as may be just, the supreme court of Oregon said in part:

"The construction, we believe, that is best adapted to advance the ends of justice, is that section 59 (the statute last above referred to) supplies the defendant, who comes within its terms by showing that he has a good defense and had no actual notice of the pendency of the suit or action, an opportunity to defend as a matter of statutory right and not of judicial discretion. *Lyon v. Robbins*, 46 Ill. 276; *Lord v. Hawkins*, 39 Minn. 73; *Boeing v. McKinley*, 44 Minn. 392; *Brown v. Conger*, 10 Neb. 236; *Green v. Goodloe*, 7 Mo. 25; *Albright v. Warkentin*, 31 Kan. 442; 23 Cyc. 916."

See, also, *Greeley & Loveland Irrigation Co. v. Handy Ditch Co.*, 77 Colo. 487, in which it was determined that no notice of proceedings constitutes "good cause."

In line with the policy generally emphasized in the American states, of securing the earliest possible settlement of the estates of deceased persons compatible with the just rights of creditors, Nebraska has enacted special laws of limitation applicable to demands against the estates of deceased persons. "These limitations exist independent of and collateral to the general law of limitation affecting

alike the right of action against living persons and the representatives of those deceased." 2 Woerner, American Law of Administration (3d ed.) sec. 400.

The statutes of Nebraska hereinbefore quoted are the statutes of nonclaim applicable to the present proceeding, and are not to be construed together with, or as attached to, the general statutes of limitation, but independent thereof. Indeed, in most states the statutes of nonclaim, or of limitations especially as to estates of deceased persons, are applied more rigorously than the general statutes of limitation. *State v. Probate Court of Hennepin County,* 145 Minn. 344. See, also, *Morgan v. Hamlet,* 113 U. S. 449.

In this view of the controlling issue presented in the instant case, no aid whatever is afforded by the following cases, cited by appellees: *Nebraska Wesleyan University v. Bowen,* 73 Neb. 598; *Estate of Fitzgerald v. First Nat. Bank of Chariton,* 64 Neb. 260; *Burling v. Allvord,* 77 Neb. 861. In these cases eight months, seven months, and almost two years, respectively, had elapsed after the time limited by the proper probate court for filing of claims had expired. Relief was not sought, and, under the facts in each case, could not have been sustained, under the controlling statute in the instant case. Necessarily the provisions of this statute (Comp. St. 1929, sec. 30-605) were not, and could not have been, involved in any of these three cases last cited. Any discussion relating thereto, if such is to be found in those opinions, must be deemed as *obiter dicta,* and in no manner binding on this tribunal. *State v. Marsh,* 107 Neb. 637; *Dempster v. Ashton,* 125 Neb. 535.

But, in the instant case, the applicant filed its application within the three months "after the expiration of the time previously allowed." It negatives all knowledge of the death of deceased, or of the pending administration of his estate; sets forth the basis of its claim; controverts negligence; and alleges the exercise of proper diligence.

Under the evidence in the record, the applicant simply

did not know of facts that would challenge its attention to the actual situation, and thus its lack of knowledge was in no manner due to lack of diligence and care in the prosecution of its business, or in failing to promptly follow up any information received, or in fact due to any negligence whatever. Under these circumstances, it failed to file its claim within the three months as limited "in the first instance" by the county court of Gage county, but as soon as information as to the death of deceased came to hand it moved with reasonable promptness and did file a proper application within the three months allowed by section 30-605, Comp. St. 1929.

The instant case is not an attempt to avoid the bar of the statute of nonclaim, but rather is an attempt to secure rights expressly granted by its terms, entirely consistent with the terms of the statute creating the bar. Until the three months have elapsed immediately following the time limited "in the first instance," "good cause shown" is ample to sustain relief; after that period we are relegated for relief, if relief is to be had, to other statutes and the general principles of equity.

This court is committed to the rule: "A court of equity, in granting relief against judgments, is not restricted to cases where the court entering the judgment complained of was without jurisdiction, but will extend its assistance in cases where jurisdiction was obtained, but the defendant, without fault or negligence on his part, but by accident or misfortune, was prevented from making his defense, provided it be further shown that he had a good defense to the merits." *Radzuweit v. Watkins*, 53 Neb. 412. See, also, *Horn v. Queen*, 4 Neb. 108; *Young v. Morgan*, 9 Neb. 169; *Poeggler v. Supreme Council, C. M. B. A.*, 102 Neb. 608; *Thompson v. Sharp*, 17 Neb. 69.

It would seem obvious that the requirements of "good cause" as applied to filing a claim against an estate would not in any event exceed the requirement for relief against service of process duly and lawfully made in ordinary actions. Indeed, it would seem that the terms of the con-

trolling statute here under consideration indicate a less degree of proof in its expressed requirement of "good cause."

We regard the question here presented as not controlled by our previous decisions, and, upon due consideration thereof, are unanimously of the opinion that the pleadings and the proof in the instant case established "good cause" within the purview of our statute of nonclaim; and that the trial court erred in determining to the contrary.

The judgment of the district court is, therefore, reversed and the cause remanded, with directions to provide for the giving of notice to all persons in ·interest, for granting additional time to claimant to file its claim, and for hearing such claim upon the merits.

REVERSED.