Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/16/2021 09:09 AM CDT

IN RE ESTATE OF JANETTE H. LODER, DECEASED.
NEBRASKA DEPARTMENT OF REVENUE, APPELLANT,
v. MIRANDA LODER, PERSONAL REPRESENTATIVE
OF THE ESTATE OF JANETTE H. LODER,
DECEASED, APPELLEE.

___ N.W.2d ___

Filed January 22, 2021.    No. S-19-1104.

1. **Decedents' Estates: Judgments: Appeal and Error.** In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

3. **Decedents' Estates: Claims: Notice: Time.** Under Neb. Rev. Stat. § 30-2485(a) (Reissue 2016), if the personal representative complies with the notice provisions of Neb. Rev. Stat. §§ 25-520.01 (Reissue 2016) and 30-2483 (Cum. Supp. 2018), a claim generally must be presented within 2 months after the date of the first publication of notice to creditors.

4. **Decedents' Estates: Claims: Debtors and Creditors: Notice.** There are two requirements that must be satisfied to mandate that a personal representative mail a creditor notice: (1) The creditor must have a direct legal interest in the decedent's estate, and (2) the personal representative must have knowledge of the creditor's claim.

5. **Decedents' Estates: Claims.** A claim that is easily ascertainable and not subject to dispute qualifies as a direct legal interest in a decedent's estate.

6. **Taxation: Time.** Nebraska individual income taxes are due, without demand, on the date fixed for filing individual income tax returns.

7. **Decedents' Estates: Taxation.** A decedent's unpaid Nebraska individual income taxes are easily ascertainable and not subject to dispute, and therefore qualify as a direct legal interest in the decedent's estate.

8. **Decedents' Estates: Debtors and Creditors.** To reasonably ascertain a decedent's creditors, a personal representative must make a reasonably diligent search, such as a reasonably prudent person would make in view of the circumstances and must extend to those places where information is likely to be obtained and to those persons who would be likely to have information regarding a decedent's creditors.

9. **Decedents' Estates: Debtors and Creditors: Time.** Traditionally, Nebraska courts have classified the nonclaim statute as a personal representative's affirmative defense to untimely creditor claims.

10. **Evidence: Proof.** Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence.

11. **Decedents' Estates: Debtors and Creditors: Claims: Evidence: Proof.** If a personal representative disallows a non-notified creditor's claim, the burden of proof is upon the personal representative to prove by the greater weight of the evidence that it conducted a reasonably diligent search to ascertain a decedent's creditors.

Appeal from the County Court for Sarpy County: Todd J. Hutton, Judge. Reversed and remanded.

Douglas J. Peterson, Attorney General, and James D. Smith for appellant.

Wayne E. Janssen for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

The personal representative of a decedent's estate disallowed a claim filed by the Nebraska Department of Revenue (Department) for unpaid lifetime Nebraska income taxes, because the Department did not file it within 2 months after published notice.[1] However, the personal representative never mailed the Department a copy of the published notice. The

---

[1] See Neb. Rev. Stat. § 30-2485(a)(1) (Reissue 2016) (nonclaim statute).

parties disagree whether the Department qualified as a known creditor, to whom the personal representative was required to mail notice.[2] Because it appears the county court failed to impose the burden of proof regarding diligent investigation and inquiry on the personal representative, we reverse the court's order disallowing the claim and remand the cause for further proceedings consistent with this opinion.

## II. BACKGROUND

Janette H. Loder (the Decedent) died intestate on September 1, 2014. Miranda Loder, acting as personal representative of the Decedent's estate, published a notice to creditors in a local newspaper for 3 consecutive weeks and mailed copies of the notice to 36 creditors, warning them that the creditors' claims filing deadline was November 24, 2014. But the Department was not one of the creditors to whom notice was mailed.

During the administration of the estate, Miranda and William Loder, the Decedent's ex-husband, personally investigated the Decedent's affairs to determine her creditors. They reviewed her financial records and various documents in her home, and talked with friends and acquaintances while compiling the creditors list. Miranda testified that she did not know that the Department was a creditor of the Decedent's estate, because she and William did not find any records indicating that the Decedent had unpaid taxes, such as a notice from the Department. However, William admitted that they did not specifically search for the Decedent's tax history, because "[they] had no reason to."

According to Miranda's testimony, the Decedent said she received alimony from William that was directly deposited into her bank account by the State of Pennsylvania. Miranda admitted that she had not inquired whether Pennsylvania paid taxes on the money the Decedent received as income. And she agreed that "any time you have income . . . taxes are owed."

---

[2] See Neb. Rev. Stat. § 25-520.01 (Reissue 2016).

In December 2016, the Department notified Miranda that the Decedent had not filed her individual income taxes for the 3 years preceding her death. In March 2017, Miranda filed the Decedent's individual income tax returns for the tax years 2011, 2012, and 2013. Those returns showed income taxes due, none of which were paid by the Decedent's estate. In August 2017, the Department filed a claim for $21,331.23, representing income tax, penalties, and interest due for the unpaid tax years. Miranda did not dispute the Department's tax calculation, but she disallowed the claim, arguing it was untimely.

Within 60 days of disallowance, the Department filed a petition with the county court for allowance of the claim. The Department argued that because it did not receive notice in compliance with both § 25-520.01 and Neb. Rev. Stat. § 30-2483 (Cum. Supp. 2018), it retained the right to file a claim within 3 years of the Decedent's death under § 30-2485(a)(2).

The court denied the Department's petition and sustained Miranda's disallowance, finding that the Department's claim was time barred because it received adequate notice of the Decedent's death under § 30-2483(a). The court stated that Miranda "afforded known creditors, by publication and mailing, and unknown creditors by publication, notice of their deadline to present claims." The court found that "neither party was aware the [D]ecedent had neglected to file until after [Miranda] filed returns in 2017." The court reasoned that "[b]ecause publication is reasonably calculated to provide notice to all claimants of the . . . deadline for presentation of claims," the Department's claim was untimely. The court did not state any factual finding regarding the adequacy of Miranda's investigation and inquiry to identify reasonably ascertainable creditors.

The Department filed a timely appeal. We granted the Department's petition to bypass the Nebraska Court of Appeals.[3]

---

[3] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2018).

## III. ASSIGNMENTS OF ERROR

The Department assigns that the county court erred by denying its petition and sustaining Miranda's disallowance of its claim against the Decedent's estate.

## IV. STANDARD OF REVIEW

[1] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

[2] Statutory interpretation is a question of law, which we resolve independently of the trial court.[5]

## V. ANALYSIS

### 1. Alternative Arguments

The Department presents three alternative arguments. First, the Department argues that Neb. Rev. Stat. § 77-2768 (Reissue 2018) controls over the Nebraska Probate Code for the Department's filing of a creditor claim when the claim involves income taxes. Alternatively, the Department claims that its regulations, found in 316 Neb. Admin. Code, ch. 36, § 015.02 (2013), govern the Department's deadline to file its claim against an estate for income taxes instead of § 30-2485(a)(1), which the county court concluded governed. If neither of these arguments is successful, the Department finally argues that because it did not receive a written copy of the published notice in accordance with § 25-520.01, it retained the right to file a claim within 3 years after the Decedent's death under § 30-2485(a)(2). We find no merit to the Department's first two alternatives and turn our attention to its final argument.

---

[4] *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020).

[5] *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014).

[3] Nebraska's nonclaim statute limits the time in which claims may be presented against an estate and specifically explains what is to be done when a creditor is not provided proper notice.[6] Under § 30-2485(a), if the personal representative complies with the notice provisions of §§ 25-520.01 and 30-2483, a claim generally must be presented within 2 months after the date of the first publication of notice to creditors.[7] However, if the personal representative fails to provide compliant notice, then a claimant may present its claim within 3 years after the decedent's death.[8]

The nonclaim statute requires that a creditor receive notice under both §§ 25-520.01 and 30-2483 to ensure creditors know of the decedent's death and are afforded the opportunity to collect from the decedent's estate, while also allowing the personal representative to expedite the distribution of the estate.[9] It is undisputed that Miranda satisfied the publication requirement of § 30-2483(a) and that the notice requirement of § 30-2483(b)[10] does not apply to the case before us. The parties disagree on whether Miranda was required to mail the Department notice under § 25-520.01, with which compliance is also required by § 30-2483(a).

## 2. NOTICE REQUIREMENTS
### UNDER § 25-520.01

Section 25-520.01 was not originally included in Nebraska's nonclaim statute. Historically, before adoption of the Uniform Probate Code (UPC), the nonclaim statute[11] required only

---

[6] See *In re Estate of Emery*, 258 Neb. 789, 606 N.W.2d 750 (2000).

[7] See *Mach v. Schmer*, 4 Neb. App. 819, 550 N.W.2d 385 (1996).

[8] *Id.*

[9] See, *Francisco v. Gonzalez*, 301 Neb. 1045, 921 N.W.2d 350 (2019); *In re Estate of Feuerhelm*, 215 Neb. 872, 341 N.W.2d 342 (1983).

[10] See § 30-2483(b) (notice to Department of Health and Human Services regarding certain decedents who resided in specified medical institutions).

[11] See Neb. Rev. Stat. § 30-609 (Reissue 1964) (barring claims not presented within time established).

notice by publication pursuant to the statutes governing notice to creditors.[12] The county judge would publish a notice in a local newspaper requiring creditors to bring their claims within a specified time.[13] However, creditors could request an extension from the court to submit their untimely claim for "good cause."[14] Commonly, a creditor could show good cause by proving it did not have notice of a decedent's death, because the creditor lived in a different county and did not receive the newspaper publication.[15]

When Nebraska first adopted the UPC, § 30-2483 (Reissue 1975) required publication of notice to creditors, as well as "mail[ing] the published notice and giv[ing] proof thereof in accordance with section 25-520.01." But § 30-2485(a)(1) (Reissue 1975) adhered to the essence of the former law and provided a creditor who did not receive notice only an additional 60-day window to apply for additional time and show good cause for an extension of the deadline. At that time, § 30-2485(a)(2) allowed presentation of a claim "within three years after the decedent's death, *if notice to creditors has not been published*." (Emphasis supplied.) That language later changed.

After the U.S. Supreme Court held in *Tulsa Professional Collection Services v. Pope*[16] that reasonably ascertainable creditors must be provided actual notice of a decedent's death, the Legislature amended § 30-2485 to condition the 2-month bar date upon compliance with both § 25-520.01

---

[12] See Neb. Rev. Stat. §§ 30-601 to 30-604 (Reissue 1964) (publication of notice and establishment of time for claim presentation).

[13] See *id.*

[14] See, Neb. Rev. Stat. § 30-605 (Reissue 1964); *In re Estate of Tucker*, 128 Neb. 387, 258 N.W. 645 (1935).

[15] See *id.*

[16] *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988).

and § 30-2483.[17] We have observed that notice by publication, while constitutionally permitted in some circumstances, is a poor bet to provide actual notice to a party of an action that affects his or her rights.[18] Recognizing the Court's decision that due process requires actual notice to known or reasonably ascertainable creditors, the Legislature incorporated § 25-520.01 into the nonclaim statute, supplementing the notice statute's mailing requirement.[19]

And the Legislature did so in both subsections (1) and (2) of § 30-2485(a). Now, § 30-2485(a)(2) (Reissue 2016) specifies that a claim will be barred if it is not presented "[w]ithin three years after the decedent's death *if notice to creditors has not been given in compliance with sections 25-520.01 and 30-2483*." (Emphasis supplied.)

[4] Under § 25-520.01, the personal representative must now mail "every party appearing to have a direct legal interest in [the administration of a decedent's estate] whose name and post office address are known to [the personal representative]" a copy of the published notice.[20] The personal representative or his or her attorney must also state by affidavit that "after diligent investigation and inquiry," both were unable to ascertain the address of any other party appearing to have a direct legal interest in the proceeding.[21] Therefore, there are two requirements that must be satisfied to mandate that a personal representative mail a creditor notice: (1) The creditor must have a direct legal interest in the decedent's estate, and (2) the personal representative must have knowledge of the creditor's claim.[22] Each requirement will be addressed in turn.

---

[17] See, *id.*; 1991 Neb. Laws, L.B. 95. See, also, *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

[18] See *Francisco, supra* note 9.

[19] See 1991 Neb. Laws, L.B. 95.

[20] See, § 30-2485(a)(2) (incorporating § 25-520.01); *Francisco, supra* note 9.

[21] See § 25-520.01.

[22] *Id.*

## (a) Direct Legal Interest

[5] The Department must have a direct legal interest in a decedent's estate in order to satisfy § 25-520.01. The Legislature has not defined the term "direct legal interest" for purposes of § 25-520.01, but we have inferred from the language employed by the Legislature that the reference was to property of the estate and property in which the law recognized that the claimant had an existing interest.[23] A claim that is "easily ascertainable and not subject to dispute" qualifies as a direct legal interest in a decedent's estate.[24] In contrast, a claim featuring potential liability of a decedent, without establishment of liability and amount of damage, does not constitute a direct legal interest.[25]

[6,7] The Department possesses a direct legal interest in all unpaid individual income taxes. Nebraska individual income taxes are due, without demand, on the date fixed for filing individual income tax returns.[26] Failure to pay taxes results in the Department's having a claim for unpaid taxes against the person, which the Department may collect through the seizure and sale of a person's property.[27] A decedent's unpaid Nebraska individual income taxes are easily ascertainable and not subject to dispute, and therefore qualify as a direct legal interest in the decedent's estate.[28]

The Department may not have a direct legal interest in every estate, but it does here. Prior to the Decedent's death, she owed individual income taxes for the tax years 2011, 2012,

---

[23] See *Farmers Co-op. Mercantile Co. v. Sidner*, 175 Neb. 94, 120 N.W.2d 537 (1963).

[24] See *In re Estate of Karmazin*, 299 Neb. 315, 322, 908 N.W.2d 381, 387 (2018).

[25] *Mach, supra* note 7.

[26] § 77-2768.

[27] See 316 Neb. Admin. Code, ch. 36, § 009.01 (2014).

[28] Compare *In re Estate of Karmazin, supra* note 24, with *Sidner, supra* note 23.

and 2013. After she died and Miranda was appointed personal representative, the Department was entitled to present its claim for the Decedent's Nebraska individual income taxes as a claim against the Decedent's estate.[29] Death did not extinguish her tax obligations, and the Department had full authority to collect from the Decedent's estate.[30] Therefore, the Decedent's failure to pay her overdue taxes generated a direct legal interest for the Department.

### (b) Known to Personal Representative

[8] Moving to the second requirement, Miranda must have "known" the Department was a creditor of the Decedent's estate for § 25-520.01 to require that Miranda mail the Department notice. But a personal representative is not allowed to rely on ignorance; the *Pope* Court's decision requires actual notice to known or reasonably ascertainable creditors.[31] The statutory text requires a party to learn what he or she could discover through diligent investigation and inquiry.[32] Legislative history confirms our understanding of the plain text: a personal representative knows of a creditor if the creditor is known or can reasonably be ascertainable.[33] To reasonably ascertain a decedent's creditors, a personal representative must make a reasonably diligent search, such as a reasonably prudent person would make in view of the circumstances and must extend to those places where information is likely to be obtained and to those persons who would be likely to have information regarding a decedent's

---

[29] See 316 Neb. Admin. Code, *supra* note 27, § 015.02 (2013).

[30] See *id*.

[31] See *Pope, supra* note 16.

[32] See § 25-520.01.

[33] See Statement of Legislative Bill, L.B. 589, Judiciary Committee, 68th Leg. (Apr. 25, 1957). See, also, *Pope, supra* note 16.

creditors.[34] If a personal representative fails to perform a reasonably diligent search to ascertain creditors, it cannot avoid the requirement of § 25-520.01 to mail notice to those who are reasonably ascertainable.

The county court did not make an express determination as to whether Miranda performed a reasonably diligent search. And our previous decisions have not articulated who bears the burden of proving that a reasonably diligent search was or was not made.

[9] Traditionally, Nebraska courts have classified the nonclaim statute as a personal representative's affirmative defense to untimely creditor claims.[35] Nebraska law consistently places the burden of proving an affirmative defense on the person utilizing the defense.[36] However, no Nebraska court has addressed whether the nonclaim statute remains an affirmative defense after the Legislature incorporated § 25-520.01 into the nonclaim statute.

Because Nebraska adopted its current statutory structure from the UPC, we look for guidance to the UPC and the states that have adopted it.[37] But since Nebraska's adoption of the UPC, the UPC has been amended, causing the Nebraska nonclaim statute to become nonconforming.[38] Additionally, the UPC does not propose a knowledge requirement as seen in § 25-520.01, because the UPC does not mandate that notice

---

[34] See, *Francisco, supra* note 9; *In re Interest of A.W.*, 224 Neb. 764, 401 N.W.2d 477 (1987); Committee Statement, L.B. 95, Judiciary Committee, 92d Leg., 1st Sess. (Jan. 23, 1991) (summary of purpose); Judiciary Committee Hearing, L.B. 95, 92d Leg., 1st Sess. 38-42 (Jan. 23, 1991); Floor Debate, L.B. 95, Judiciary Committee, 92d Leg., 1st Sess. 267-72 (Jan. 28, 1991).

[35] See, *In re Estate of Masopust*, 232 Neb. 936, 443 N.W.2d 274 (1989); *In re Estate of McCleneghan*, 145 Neb. 707, 17 N.W.2d 923 (1945).

[36] See, e.g., *Kaspar v. Schack*, 195 Neb. 215, 237 N.W.2d 414 (1976).

[37] See Committee Statement, L.B. 354, Judiciary Committee, 83d Leg., 2d Sess. 1-2 (Feb. 4, 1974).

[38] See, Unif. Probate Code § 3-801, 8 (part II) U.L.A. 261 (2013); Unif. Probate Code § 3-803, 8 (part II) U.L.A. 271 (2013).

be mailed to known creditors.[39] Uncertain about "the possible applicability [of *Pope*] to [its nonclaim statute],"[40] the UPC editors updated the UPC to make mailing notice to creditors optional, stating: "A personal representative may give written notice by mail or other delivery to a creditor . . . ."[41] Consequently, the UPC's language provides little guidance on this matter, because it does not mandate a personal representative to perform a reasonably diligent search to ascertain creditors and mail notice to known creditors. These requirements are imposed by Nebraska's nonclaim statute.[42]

Looking to other UPC states, the UPC's uncertainty on *Pope* has led to significant variation in states' nonclaim statutes and who carries the burden of proving compliance.[43] Some states have incorporated *Pope* into their nonclaim statutes and require personal representatives to conduct a reasonably diligent search to ascertain the decedent's creditors, but other states have mirrored the UPC's optional approach.[44]

UPC states incorporating *Pope* into their nonclaim statutes have classified the nonclaim statute as an affirmative defense that a personal representative has the burden of proving.[45] Because, as a non-UPC state explains, "the operation of the nonclaims provisions result[s] in the forfeiture of what

---

[39] See *id.*

[40] Unif. Probate Code, *supra* note 38, § 3-803, comment, 8 (part II) U.L.A. at 272. See *Pope, supra* note 16.

[41] Unif. Probate Code, *supra* note 38, § 3-801, 8 (part II) U.L.A. at 261.

[42] Compare § 25-520.01 and § 30-2485, with Unif. Probate Code, *supra* note 38, §§ 3-801 and 3-803.

[43] Compare Fla. Stat. Ann. § 733.2121(3)(a) (West 2017 & Cum. Supp. 2020) and *Jones v. Golden*, 176 So. 3d 242 (Fla. 2015), with N.M. Stat. Ann. § 45-3-801 (2019) and *Corlett v. Smith*, 106 N.M. 207, 740 P.2d 1191 (N.M. App. 1987).

[44] Compare § 733.2121(3)(a) and *Jones, supra* note 43, with § 45-3-801 and *Corlett, supra* note 43.

[45] See, *Jones, supra* note 43; *Morgenthau v. Estate of Andzel*, 26 So. 3d 628 (Fla. App. 2009), *disapproved on other grounds, Jones, supra* note 43.

might otherwise be meritorious claims, the burden of pleading and proof regarding compliance with the provisions properly rests on one claiming the benefit of those provisions."[46] In fact, some UPC states that do not have a knowledge requirement nonetheless apply this policy principle and classify the nonclaim statute as an affirmative defense, citing "the general rule in civil cases that one who pleads an affirmative defense has the burden of proving it."[47]

[10,11] We see no reason not to continue to classify the nonclaim statute as an affirmative defense and follow other UPC states in that regard. Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence.[48] We therefore hold that if a personal representative disallows a non-notified creditor's claim, the burden of proof is upon the personal representative to prove by the greater weight of the evidence that it conducted a reasonably diligent search to ascertain a decedent's creditors.[49]

### 3. Resolution

Because Miranda relied upon the affirmative defense of the nonclaim statute, she had the burden of proving that she conducted a reasonably diligent search to ascertain whether the Department was a creditor of the Decedent's estate. We have already noted that Nebraska individual income taxes are due every year, without demand, by any individual who generates income over a specified threshold.[50]

The language of the county court's order suggests that it did not address the question whether Miranda conducted a

---

[46] See *Matter of Estate of Pope*, 733 P.2d 396, 399 (Okla. 1987), *reversed sub nom. Pope, supra* note 16 (overturned on other grounds).

[47] *Hitt v. J. B. Coghill, Inc.*, 641 P.2d 211, 213 (Alaska 1982).

[48] *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

[49] See, generally, § 733.2121(3)(a); *Jones, supra* note 43; *Morgenthau, supra* note 45; *Hitt, supra* note 47.

[50] See § 77-2768.

reasonably diligent search regarding the potential claim against the Decedent for unpaid lifetime individual income taxes. Rather, the court seems to have focused only on Miranda's and the Department's actual knowledge. This may have been driven by the court's articulation regarding the publication requirement for unknown creditors. Thus, the court's language does not demonstrate that it examined whether Miranda established that the Department's potential claim was not ascertainable by reasonably diligent inquiry. In this sense, the court's decision did not conform to the law.

But the question thus posed turns upon the court's view of the facts. As William testified, he and Miranda did not search for tax records. Miranda seemed to have some knowledge of the Decedent's alimony income. And Miranda acknowledged that when one has income, taxes are owed. Whether the extent of the inquiry was reasonable may turn on issues of credibility and heavily depends upon the fact finder's view of the evidence. Because our standard of review gives considerable deference to the county court's factual findings, that court should assess in the first instance the facts underlying the sufficiency of Miranda's search.

## VI. CONCLUSION

We therefore reverse the disallowance of the Department's claim and remand the cause to the county court for reconsideration of the existing record to determine whether Miranda met her burden of proving that she conducted a reasonably diligent search and that the Department's status as a creditor was not reasonably ascertainable. If upon remand the court concludes that Miranda did so, the court should disallow the Department's claim. On the other hand, Miranda did not dispute the amount of taxes owed or that she did not mail notice of the proceeding to the Department. If the court concludes that Miranda did not satisfy her burden of proof, the court should allow the claim in full.

REVERSED AND REMANDED.